EFILED IN OFFICE
CLERK OF SUPERIOR COURT
CLARKE COUNTY, GEORGIA

**SU19CV0237**

H. PATRICK HAGGARD
APR 17, 2019 02:29 PM

Beverly Logan, Clerk
Athens - Clarke County, Georgia

IN THE SUPERIOR COURT OF CLARKE COUNTY
STATE OF GEORGIA
CIVIL ACTION FILE NO. _____

| | |
|---|---|
| **WARREN COOMBS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **vs.** | ) |
| | ) |
| **JERE W. MOOREHEAD, individually** | ) |
| **and in his capacity as President of the** | ) |
| **University of Georgia, and the Board of** | ) |
| **Regents of the University System** | ) |
| **of Georgia,** | ) |
| | ) |
| **Defendants.** | ) |

## COMPLAINT

### Causes of Action (Preliminary Statement)

-1-

a) This is an action brought by the **Plaintiff, WARREN COOMBS**, a former student at the **University of Georgia**, whereby **Plaintiff** was denied his due process rights in an expulsion hearing, in violation of the **Fourteenth Amendment** to the **US Constitution,** which says: **"No state shall…deprive any person of life, liberty or property, without due process of law"**; and, in violation of **Article 1**, **Section 1, Paragraph 1** of the **Georgia Constitution** which reads: **"No person shall be deprived of life, liberty, or property except by due process of law"**; and **Article 1, Section 1, Paragraph II** of the **Georgia Constitution** which reads: **"Protection to person and property is the paramount duty of government and shall be impartial and complete no person shall be denied equal protection of the laws."**

b) **Plaintiff**, a citizen of **Georgia**, and a former student at the **University of Georgia**, a public college, was entitled to **"notice and some opportunity for a hearing"** before he could be expelled for any alleged misconduct.

-2-

**Defendants'** action expelling **Plaintiff** from school without **"notice and some opportunity for a hearing"** is a violation of **Plaintiff's** contractual right to an education at the **University of Georgia**.   **(See school's Bill of Rights marked as Exhibit J attached hereto.)**

**Parties and Service**

-3-

**Plaintiff, WARREN COOMBS**, is a former student at the **University of Georgia** during the school year **2015 – 2016**; he was expelled from the **University of Georgia**, by letter of **Defendant, JERE W. MOOREHEAD** on **September 8, 2016**.

-4-

a) **Defendant, JERE W. MOOREHEAD** is the **President** of the **University of Georgia**; and, he served as **President** during the school year **2015 – 2016**.

b) **Defendant, JERE W. MOOREHEAD** may be served with a copy of this **Complaint** and **Summons** at the **University of Georgia, 220 South Jackson Street, The Administration Building, Athens, Georgia 30602**.

-5-

a) **Defendant, Board of Regents of the University System of Georgia** is the governing body responsible for the operation of the **University System of Georgia** as provided by the **Constitution** of the **State of Georgia** and laws enacted pursuant thereto.   The

**University of Georgia** is a member of the **University System of Georgia**, and is governed and operated by the **Defendant, Board of Regents of the University System of Georgia**.

b) The **Defendant,** the **Board of Regents of the University System of Georgia** may be served by leaving a copy of this **Complaint** and **Summons** with **Dr. Steve Wrigley, Chancellor of the Board of Regents of the University of Georgia, 270 Washington Street, S.W., Atlanta, GA 30334.**

**Jurisdiction and Venue**

-6-

The **Defendants,** the **Board of Regents of the University System of Georgia** and **Defendant, JERE W. MOOREHEAD** in his personal and official capacity as **President** of the **University of Georgia** have no governmental immunity to suit and/or liability against the **Plaintiff's** claims for violation of his rights and denial of due process; and the wrongful denial of his contractual right to higher education at the **University of Georgia;** this Court has the legal authority to correct the wrongful acts of the **Defendants**.

-7-

Venue is proper in **Clarke County, Georgia** because the wrongful acts giving rise to these causes of action occurred in **Clarke County, Georgia.**

**Conditions Precedent**

-8-

All conditions precedent have been performed. **Plaintiff** has complied with exhausting his administrative appeal of the decision to expel him from the **University of**

**Georgia**.   The **Defendant**, **Board of Regents of the University System of Georgia** rendered a final ruling denying **Plaintiff's** appeal on **January 7, 2019** by an unsigned e-mail.  **(A copy of e-mail is attached hereto, marked as Exhibit A.)**

-9-

And, the **Plaintiff** by certified mail dated **August 8, 2017**, provided the **State of Georgia** with notice of his claim against the **State of Georgia** for his wrongful expulsion from the **University of Georgia**.  A copy of the **Ante Litem Notice** of **August 8, 2017** is attached hereto, marked as **Exhibit B**.

Facts of the Case

-10-

On or about **April 13, 2016**, **Plaintiff** was suspended from the **University of Georgia** pending the investigation of an alleged act of misconduct violating the school's **Non-Discrimination and Anti-Harassment Policy**.  See **Exhibit C** attached hereto.

-11-

The **Plaintiff** responded to the allegation of misconduct; he denied violating the school's **Non-Discrimination and Anti-Harassment Policy**.   See **Exhibit D** attached hereto.

-12-

**Defendant**, JERE W. MOOREHEAD acknowledged receipt of the **Plaintiff's** letter contesting the allegation of wrongdoing.  See **Exhibit E** attached hereto.

-13-

By letter dated **June 10, 2016 (Exhibit F attached hereto)**, the **University of Georgia** notified the **Plaintiff** that the school had investigated the alleged act of

4

misconduct, and had found the allegations of the act of misconduct to be credible; and after finding the allegations of the act of misconduct to be credible, he was expelled from the **University of Georgia**.

-14-

The fact-finding body expelled **Plaintiff** from the **University of Georgia** without giving him any opportunity to challenge the credibility of the adverse witnesses' statements against him.

-15-

The fact-finding body expelled **Plaintiff** from the **University of Georgia** without providing the **Plaintiff** with any information relevant to the alleged act of misconduct.

-16-

The fact-finding body expelled **Plaintiff** from the **University of Georgia** without providing him with a list of adverse witnesses and a summary of their testimony, used in to support the allegation of misconduct.

-17-

The fact-finding body expelled **Plaintiff** from the **University of Georgia** without affording him a meaningful opportunity to be heard.

-18-

By letter dated **June 22, 2016 (Exhibit G attached hereto)**, **Plaintiff** through his attorney appealed to **Defendant, JERE W. MOOREHEAD** the school's ruling expelling him, demanding a hearing to allow him to contest the truthfulness of the allegations of the act of misconduct before an independent fact-finding body.

-19-

By letter dated **September 8, 2016 (Exhibit H attached hereto), Defendant,
JERE W. MOOREHEAD** summarily denied **Plaintiff's** appeal, upholding the school's
expulsion without allowing **Plaintiff** to contest the truthfulness of the allegations of the
act of misconduct resulting in his expulsion.

-20-

**Defendant, JERE W. MOOREHEAD** knew that the **Plaintiff** was represented
by legal counsel on the appeal.   Nevertheless, he failed, and refused to respond to
**Plaintiff** attorney's appeal of the school's decision of **June 10, 2016.**

-21-

**Defendant, JERE W. MOOREHEAD** did not notify the **Plaintiff's** attorney of
his final decision of **September 8, 2016**.

-22-

When **Plaintiff** obtained a copy of the school's final decision; the time to appeal
had run.

-23-

By way of an out-of-time appeal; the **Plaintiff** appealed the **September 8, 2016
Decision** of **Defendant, JERE W. MOOREHEAD** to **Defendant, Board of Regents of
the University System of Georgia** by letter of **August 29, 2018 (see appeal, marked as
Exhibit I attached hereto).**

-24-

**Defendant,** the **Board of Regents of the University System of Georgia**
summarily denied the **Plaintiff's** appeal on **January 7, 2019** without considering any of

**Plaintiff's** concerns about the fairness of the proceedings resulting in his expulsion. **(See Defendant, Board of Regents of the University System of Georgia's decision marked as Exhibit A, attached hereto.)**

<u>**Cause of Action:**</u>      **Failure to Provide Due Process Rights**

-25-

The **Defendants** failed to provide the following due process rights to assure the granting of fundamental fairness in its consideration of **Plaintiff's** case:

a) **Defendants** failed to grant **Plaintiff** the right to counsel;

b) **Defendants** failed to grant **Plaintiff** the right to challenge the findings of the school's investigator;

c) **Defendants** failed to grant **Plaintiff** the right to question his accuser and other adverse witnesses;

d) **Defendants** failed to grant **Plaintiff** the right to a hearing before an independent body; and

e) **Defendants** failed to provide to the **Plaintiff**, his constitutional rights of fundamental fairness in the case resulting in his expulsion.

<u>**Cause of Action:**</u>      **Breach of Contract**

-26-

The **Defendants** breached their contract to grant fundamental fairness in its consideration of **Plaintiff's** case by failing to give to **Plaintiff** all of the procedural protections they promised him upon his admission to the **University of Georgia** as set out in the rules governing school discipline in the student handbook.

**WHEREFORE**, **Plaintiff** demands:

1) that **Defendants'** action resulting in his expulsion be set aside, and the expungement of any and all records concerning the expulsion;

2) that **Plaintiff** be allowed to return to the **University of Georgia** to complete his education immediately;

3) that **Plaintiff** be awarded his costs, including reasonable attorney's fees for this action;

4) that **Plaintiff** be awarded monetary compensation for financial and emotional damage; and

5) that **Plaintiff** have such other relief that this Court believes to be fair and equitable under the circumstances of this case.

This _____1_____ day of _____April_____, 2019.


Respectfully submitted,


**BENJAMIN ALLEN**
**Attorney for Plaintiff**
**P. O. Box 156**
**Augusta, GA 30903**
**706/724-7023**
**706/722-2095 (Fax)**
**GA State Bar No. 009836**

STATE OF GEORGIA            )
                           )
COUNTY OF RICHMOND          )

# V E R I F I C A T I O N

In person before the undersigned-attesting officer comes the undersigned party, who on oath, deposes and states that all the allegations of facts contained in the foregoing petition are true and correct.

_____
**WARREN COOMBS**

Sworn to and subscribed before me.

This ___1___ day of ___April___, 2019.

_____
NOTARY PUBLIC
My Commission Expires: ___Sept 17, 2021___



Warren Coombs

**From:** usg-legal <usg-legal@usg.edu>
**To:** 'bathelaw93@aol.com' <bathelaw93@aol.com>
**Subject:** Warren Coombs
**Date:** Mon, Jan 7, 2019 5:29 pm



Dear Mr. Allen:

Thank you for your letter dated December 5, 2018. Given that President Morehead's decision was issued on September 8, 2016, and your client received notice of the decision in January 2017, your client's appeal is untimely and we decline to grant his request for review.

Sincerely,

**Office of Legal Affairs**

Board of Regents of the

University System of Georgia

270 Washington Street, SW

Atlanta, GA 30334

Phone: 404-962-3255

usg-legal@usg.edu



EXHIBIT
B

# FRAILS & WILSON LLC

## ATTORNEYS AT LAW

RANDOLPH FRAILS, GA & SC
RANDYFRAILS@FRAILSWILSONLAW.COM
TAMEKA HAYNES GA & MD
THAYNES @FRAILSWILSONLAW.COM

EDWIN A. WILSON, GA
EDWINWILSON@FRAILSWILSONLAW.COM
KELLI SPENCER, GA
KELLISPENCER@FRAILSWILSONLAW.COM

August 8, 2017

## *CERTIFIED MAIL—RETURN RECEIPT REQUESTED*
## *NUMBER: 7017 1450 0002 1141 0015*

Risk Management Division
Department of Administrative Services, State of Georgia
Suite 1504, West Tower
200 Piedmont Avenue SE
Atlanta, GA 30334

### ANTE LITEM NOTICE

**RE:    State Tort Claim Act**
       **Claimant: Warren G. Coombs**
       **Date of Loss: September 8, 2016,**

To Whom It May Concern,

Please be advised that this letter is written pursuant to O.C.G.A. § 50-21-26 and constitutes a notice of claim against the State. The State entity involved in this matter is the Board of Regents of the University System of Georgia, specifically University of Georgia at Athens. We are writing this letter on behalf of Warren G. Coombs, because of his expulsion from University based upon the unsubstantiated claims of off-campus and on-campus sexual assault by some fellow students.

Mr. Coombs was a 19-year-old freshman at UGA when he was accused of sexual assault by two fellow students. The first incident allegedly occurred on or about January 14 and 15, 2016. The second incident allegedly occurred on February 14, 2016.

Shortly after incidents, the University of Georgia Equal Opportunity Office conducted investigations regarding both incidents and thereafter:

1.  Expelled Mr. Coombs from the University of Georgia and designated him as permanently ineligible for future admission or enrollment.

2.  Barred Mr. Coombs from The University of Georgia campus and all UGA owned property.



3. Barred Mr. Coombs from any off-campus functions or event hosted by UGA or their affiliates.

4. Threatened Mr. Coombs with arrest for trespass if he was found in violation of items 1 through 3;

5. Demanded that Mr. Coombs have no contact with either of the alleged victims.

School disciplinary proceedings are not courts of law and therefore are not equipped to ensure fundamental due process protections. As such there was no factual basis for the school to issue severe sanctions in either case. As a result of the schools actions, Mr. Coombs has suffered a violation of his Fourteenth Amendment due process rights, freedom of association rights, and breach of contract regarding his education.

Mr. Coombs present and future and losses related to these claim exceed **two million dollars** and any future amounts to be proven at trial.

This letter shall act as a "Notice of Claim" pursuant to O.C.G.A. § 50-21-26, and is therefore sent by certified mail.

Very truly yours,

Randolph Frails

Cc:    Christopher M. Carr, Esq.
       Office of the Attorney General
       Department of Law, State Judicial Building
       40 Capital Square SW
       Room 132
       Atlanta, GA 30334-1300
       *CERTIFIED MAIL—RETURN RECEIPT REQUESTED*
       *NUMBER: 7017 1450 0002 1141 0022*


       Chancellor Steve Wrigley
       The Board of Regents of the University System of Georgia
       270 Washington Street SW
       Atlanta, GA 30334
       *CERTIFIED MAIL—RETURN RECEIPT REQUESTED*
       *NUMBER: 7017 1450 0002 1141 0039*

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Office of the Attorney General
Dept. of Law
40 Capital Square SW
Room 132
Atlanta, GA 30334-1300

9590 9402 3040 7124 1463 52

2. Article Number (Transfer from service label)
7017 1450 0002 1141 0022

PS Form 3811, July 2015 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X S Coles
☐ Agent
☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery
RECEIVED   AUG 11 2017
DEPARTMENT OF LAW

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Risk Management Division
Department of Admin Services
Suite 1504 West Tower
200 Piedmont Ave SE
Atlanta, GA 30334

9590 9402 3040 7124 1463 45

2. Article Number (Transfer from service label)
7017 1450 0002 1141 0015

PS Form 3811, July 2015 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X Ashley Ford
☐ Agent
☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery
Ashley Ford   8/14/17

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt

PS Tracking Intranet

Help

 **UNITED STATES**
**POSTAL SERVICE** ®

# Product Tracking & Reporting

August 25, 2017

**Home**     **Search**     **Reports**     **Manual Entry**     Rates/
Commitments     PTR / EDW     USPS Corporate
Accounts

## USPS Tracking Intranet
### Delivery Signature and Address

⚠ Starting on Wednesday, July 26, 2017, the End of Day (EOD) report will be disabled. This report is being suspended to investigate improper use of the data that negatively impacts visibility and our customers' tracking experience. The End of Day report is intentionally unavailable and there is no system defect. Do not log a Help Desk ticket for this change. Thank you for your support.

Tracking Number: 7017 1000 0001 1693 6022

This item was delivered on 08/23/2017 at 09:37:00

< Return to Tracking Number View

| | www.usps.com/redelivery or 800-ASK-USPS (275-8777) Delivery Section | |
|---|---|---|
| **Signature** | X *Oriana Y. Torres* | |
| **Printed Name** | *Oriana Y. Torres* | |
| **Address** | **Delivery Address** *30334* | |

Enter up to 35 items separated by commas.

Select Search Type: [ Quick Search ▾ ]     [ Submit ]

Product Tracking & Reporting, All Rights Reserved
Version: 13.3.0.0.8

This is The
Signiture showin
Somebody Sign for it
This is The Letter
That went to The
Board of Reagent

# The University of Georgia ®

Equal Opportunity Office



April 13, 2016

**VIA HAND DELIVERY AND**
**EMAIL - WARREN.COOMBS25@UGA.EDU**
Mr. Warren Coombs

**Re: Notice of NDAH Policy Investigation, Interim Suspension & No Contact Directive**

Dear Mr. Coombs:

I am the Assistant Director of UGA's Equal Opportunity Office (EOO). The EOO administers the University's Non-Discrimination and Anti-Harassment (NDAH) Policy, which is located at https://eoo.uga.edu/policies/non-discrimination-anti-harassment-policy. A copy of the NDAH Policy is also enclosed, along with a copy of the EOO Bill of Rights & Acknowledgments which outlines your rights under the NDAH Policy.

The EOO has received information alleging that you have engaged in non-consensual sexual activity with two UGA students,          (in or about February 2016), and          (in or about January 2016). Non-consensual sexual activity between UGA students is a form of sexual harassment that is prohibited under Section I.B of the NDAH Policy. Accordingly, the EOO is opening an investigation into these alleged matters. As part of that investigative process, you will be given the opportunity to respond to the allegations and related information and evidence obtained by the EOO and to identify witnesses and present any information or evidence you believe to be relevant.

**INTERIM SUSPENSION**

Pursuant to Section III.B of the NDAH Policy, which authorizes the use of interim protective measures for the safety and well-being of the University community and individual members thereof, the EOO has determined that an interim suspension during the pendency of the NDAH Policy investigation is warranted. This means that once the interim suspension takes effect as described below, you are prohibited from attending any classes or engaging in any academic activity associated with your enrollment as a UGA student or engaging in any employment-related activity as a UGA employee. Further, you are not permitted to enter or be present on any UGA campus or facility and you may not participate in any UGA sponsored activity. An interim suspension does not indicate that a violation of the NDAH Policy has occurred.

**Unless you are otherwise notified by the EOO, the interim suspension will take effect at noon (12 pm) on Thursday, April 14, 2016.** Prior to that time, if you would like to respond to the general nature of the allegations above or be heard on whether your presence on

119 Holmes-Hunter Building • Athens, Georgia 30602-1622
Telephone 706-542-7912 • Fax 706-542-2822
The University of Georgia is an Equal Opportunity/Affirmative Action Institution. All qualified persons will be considered without

Mr. Warren Coombs
April 13, 2016
Page **2** of **3**

campus poses a danger, you may contact the EOO Director/NDAH Officer/Title IX
Coordinator, E. Janyce Dawkins, at edawkins@uga.edu or (706) 542-7912.

Failure to comply with the interim suspension may provide an independent basis for
disciplinary action by the University.

## NO-CONTACT DIRECTIVE

Also pursuant to Section III.B of the NDAH Policy, **effective immediately** and until further
notice from the EOO or the UGA President, you are directed not to initiate and to avoid any
contact with              and with                including staying away from their
residences and any other locations where you know that one or the other of them is likely to
be. Prohibited contact includes, without limitation, in-person; phone, handwritten letter,
email, text, Facebook, Twitter or other electronic forms of communication/social media; any
attempts to communicate with either          or          n through their friends or family
members; and any communication by a third party with          or          on your
behalf.

Failure to comply with this no-contact directive may provide an independent basis for
disciplinary action by the University.

## APPEAL OF INTERIM PROTECTIVE MEASURES

Once each interim protective measure (i.e., the interim suspension and the no-contact
directive) takes effect, you have two (2) working (i.e., business) days in which you may
appeal that particular interim protective measure in writing to the UGA President's Office at
president@uga.edu. Once each interim protective measure takes effect, you may also request
a hearing (meaning an opportunity to be heard) to determine whether the interim protective
measure should continue by contacting the UGA President's Office at president@uga.edu.
Such hearing will be held within three (3) business days of the request. The interim
protective measures will remain in effect during any appeal or request to be heard unless
modified by the NDAH Officer or the President, or overturned by the President.

## PROHIBITION AGAINST RETALIATION

The NDAH Policy prohibits retaliation against any person for making a report to the EOO,
for participating in the EOO's investigation of such a report, or for otherwise being
associated with an EOO investigation. Allegations of retaliation are separately investigated
by the EOO and, if substantiated, provide an independent basis for disciplinary action under
the NDAH Policy. Retaliation includes intimidation, discrimination, harassment or any other
adverse action or inaction against a person if motivated by a desire to punish that person for
seeking the assistance of the Equal Opportunity Office or for cooperating with, or having any
association with, an EOO investigation. Therefore, you are prohibited from retaliating
against                    , or anyone else in connection with the foregoing no-
contact directive, your interim suspension, or the EOO's investigation of the allegations
against you.

Mr. Warren Coombs
April 13, 2016
Page **3** of **3**

If you have any questions, you may reach me at cnorins@uga.edu or (706) 542-7912.  If I am not available, you may ask to speak with the EOO Director/NDAH Officer/Title IX Coordinator, E. Janyce Dawkins.

Sincerely,

Clare Norins
EOO Assistant Director


Encl.   *Non-Discrimination and Anti-Harassment Policy*
        *Bill of Rights and Acknowledgements for Complainants and Respondents*

Cc.     E. Janyce Dawkins, Equal Opportunity Office
        Jimmy Williamson, University Police
        Kathy Pharr, Office of University President
        Victor K. Wilson, Vice President for Student Affairs
        Bill McDonald, Dean of Students
        Eric Atkinson, Assistant Vice President for Student Engagement
        Barrett Malone, Director of Student Conduct
        Mike Raeber, Legal Affairs

To the president office,



16 April 2016

This letter is an appeal to my interim protective measures. The measures include an interim suspension and the no-contact directive with two people. The interim protective measures will begin Thursday at 12pm.  The reason for the interim protective measures is because there are allegations of me having non-consensual sexual activity with two University of Georgia students during two different occasions. However this letter will explain these allegations accurately and respectfully

The first young lady, I                          who is accusing me of sexual assault is not telling the truth about the situation. We met in downtown Athens one night on a weekend. We had been dancing together throughout the night. Once the bar started closing, she grabbed my hand and led me outside to a car, as she offered me to go home with her.  I do not remember if she was driving or her friends but I was in the back seat. They took me to a location I was unfamiliar with. Once I got into the house, there was about two or three other girls with us. They were having conversation but since I did not know any of them I stayed quiet. Soon her friend suggested that                bring me upstairs to use one of the rooms. Since this was not my house, I had no idea where she was talking about. '           proceeded to grab my hand and took me to whichever room her friend was suggesting.

When we got into the room, she went and used the bathroom. While she was in the restroom, I sat on the bed and texted. When she came out of the restroom, I then laid back on the bed and she came on top on me and started kissing me. While we were kissing, we began removing our clothing. She only went down to bra and panties. My pants were only pulled down halfway. She began to perform fellatio. I remember looking for a condom in my pockets while she was doing this so we could have intercourse. However, I was not able to find one so I did not pursue the act. After performing fellatio for a while, I remember she grabbed my penis really hard and started crying. She

began to say, "This doesn't feel right. Why am I doing this?" Then in haste, she hopped off of me and ran into another room and slammed the door. Her friends downstairs heard her slam the door and came upstairs trying to see what was wrong. She let her friends in and then locked the door. I knocked a few times trying to see if everything was okay and no one responded. After being by myself in a house that I did not know and in a location I was unfamiliar with late at night, I decided to call an Uber ensure I would get home safely.

Furthermore, the second young lady, _____ who is also accusing me of sexual assault, is not telling the truth either. _____ has had relations with all my roommates and has known me since the beginning of the year. The night where we all met up downtown, it was _____, her friend, and me. All three of us left together to go back to my place. Once we got there, all three of us were in my room talking. After about ten minutes, her friend got up and stated, " I have a boyfriend and I don't need to be in here". I said okay and opened the door for and she left the room. _____ stayed in the room and started texting. I asked her if she was comfortable and she said everything is fine and she just wanted to text someone for a moment. Once we started kissing, she unbuttoned her pants and slid them down. I asked her to perform fellatio but she declined and proceeded to turn around and bend over. I proceeded to put fingers near her vagina. As I started looking for condoms in my drawer, she started to panic and she told me to stop. I stopped and she started getting up. Her friend came knocking on the door, which I opened for her. Her friend and I repeatedly asked if _____ was ok and she responded, "Yes everything is fine. I have a boyfriend so I really do not need to be doing this". After that, her and her friend both left.

Both of these young women are not telling the truth about these allegations. I did not have intercourse with either of them and I will be willing to take a DNA test for evidence. I also have witness that can share certain events that took place. I did not force myself upon them at any time nor force them to perform any unwanted actions. I have

not had contact with these two girls since the situation took place and I do not plan on communicating with either of them.  The interim suspension will effect my education, my job, and my friends and family. I will not be able to pursue my education here nor finish my freshman year because finals are coming up and I would not be able to attend class. My GPA would be an inaccurate representation of my academic abilities. Because the year is almost over, I would not have any place to live and would have no way of making money to survive. After these events were reported, I was suspended from the football team. However, I decided to utilize my time in a productive manner and got a job on campus to help serve the Bulldog community. I also decided to work on my faith. I just recently joined my girlfriend's church as I'm trying to pursue a pure lifestyle.



EXHIBIT

E

## The University of Georgia ®

Office of the President

April 19, 2016

Mr. Warren Combs
1371 Waterston Drive
Evans, Georgia 30809

Dear Mr. Combs:

On behalf of the Office of the President, I write to acknowledge receipt of your letter appealing the recent decision of the Equal Opportunity Office.  The Office of the President will review your appeal and notify you once a decision is made.

Sincerely,

Arthur L. Tripp
Assistant to the President

*This came in the mail on 22 April 2016*

220 South Jackson Street • The Administration Building • Athens, Georgia 30602-1661
Telephone 706-542-1214 • Fax 706-542-0995





The University of Georgia

Equal Opportunity Office
June 10, 2016

<u>VIA EMAIL – warren.coombs25@uga.edu</u>
Mr. Warren Coombs

<u>Re</u>:  NDAH Violation & Expulsion

Dear Mr. Coombs:

I am writing to let you know the findings of my investigation of fellow University of Georgia (UGA) student                    s report that you engaged in non-consensual sexual intercourse with her in the early morning hours of February 14, 2016 in your bedroom in UGA's Vandiver Residence Hall.  You report that you did not engage in sexual intercourse with Ms.

As a representative of the University's Equal Opportunity Office (EOO), I investigated                    s report pursuant to the Non-Discrimination and Anti-Harassment Policy (NDAH Policy), located at https://eoo.uga.edu/policies/non-discrimination-anti-harassment-policy.  This Policy prohibits, among other things, sexual harassment, including rape, sexual assault and sexual battery, all of which are forms of gender-based discrimination under Title IX of the Education Amendments of 1972.  It is the EOO's obligation to thoroughly investigate all reports or complaints of alleged conduct by any member of the UGA community that may violate the NDAH Policy, to make an appropriate determination as to whether any violation(s) occurred, and to impose an appropriate sanction and/or other remedial action as warranted.[1]

In relevant part, the NDAH Policy defines sexual harassment as "[u]nwelcome . . . . . . physical conduct of a sexual nature when: . . . [s]uch conduct has the purpose or effect of: . . . creating an intimidating, hostile or offensive . . . learning environment."  NDAH Policy, Sect. I.B.  This includes, without limitation, "[p]hysical contact of a sexual nature perpetrated without consent (e.g., without clear words or actions that are knowingly, freely and actively given

---

[1] In this case, pursuant to Section III.B ("Interim Protective Measures") of the NDAH Policy, the EOO interim suspended and barred you from campus during the pendency of the EOO investigation, as well as directing you not to initiate and to avoid any contact with                    , and putting you on notice that you could not retaliate against anyone associated with the EOO investigation. The interim protective measures were upheld by the UGA President's Office on your appeal.  During the course of the EOO investigation, you violated the terms of the interim protective measures at least twice by coming on campus and entering a UGA residence hall, resulting in your arrest by the UGA Police Department for trespass.

119 Holmes-Hunter Building • Athens, Georgia 30602-1622
Telephone 706-542-7912 • Fax 706-542-2822
The University of Georgia is an Equal Opportunity/Affirmative Action Institution. All qualified persons will be considered without regard to race, color, religion, sex, national origin, disability, gender identity, sexual orientation or protected veteran status.

Warren Coombs
June 10, 2016
Page 2

indicating permission to engage in mutually agreed upon sexual activity) . . ..” *Id*. When investigating sexual harassment complaints under the University's NDAH Policy, the EOO defines "consent" as:

> Clear words or actions that are knowingly, freely and actively given indicating permission to engage in mutually agreed upon sexual activity, outside the door of your bedroom during the same reported activity. Consent may be withdrawn at any time without regard to sexual activity preceding the withdrawal of consent. The existence of a current or previous intimate relationship between the parties is not alone sufficient to constitute consent. Consent may not be inferred from silence or passivity alone. Non-consent occurs when the complaining party is prevented from or incapable of giving consent (due to, for example, use of drugs or alcohol, or physical or intellectual disability) and this fact is known to the person committing the act.

*See* https://eoo.uga.edu/definitions/consent.[2]

In the course of the EOO investigation, I obtained and considered, without limitation: information provided by you and by            about the events of February 14, 2016; information provided by the individual (Witness 1) who was present in your bedroom immediately prior to the reported non-consensual sexual activity, outside the door of your bedroom during the same reported activity, and with            immediately afterwards; text messages between          nd Witness 1 prior to and during the reported non-consensual sexual activity; text messages between            and your Vandiver Residence Hall suitemate prior to and during the reported non-consensual sexual activity; information provided by another individual (Witness 2) who was with            on February14 shortly after the reported non-consensual sexual activity; and information regarding            ; undergoing a Sexual Assault Nurse Examiner (SANE) exam on February 14, 2016 and the vaginal tearing reportedly observed.

You and your attorney were given the opportunity to review and respond to the allegations and related information contained in the EOO investigative file (including the information described above); to identify witnesses; and to present any information, evidence or arguments that you believed to be relevant, all of which were taken into consideration.

In viewing all of the information obtained in the course of the investigation, and applying the standard of preponderance of the evidence (i.e., "more likely than not"), I find that you engaged in sexual intercourse with            in the early morning hours of February 14, 2016. I find that this occurred without            consent. I therefore find that you engaged in conduct that violated the NDAH Policy.[3]

---

[2] There is no allegation in this case of incapacitation due to alcohol or other cause.

[3] In a separate but concurrently-conducted EOO investigation, you have also been found to have engaged in non-consensual sexual intercourse with another UGA student in January 2016.

Warren Coombs
June 10, 2016
Page 3

## Sanction

Given the severity of the foregoing NDAH Policy violation, and the substantial evidence supporting it, effective as of the date of this letter:

- You are expelled from the University of Georgia and are permanently ineligible for future admission or enrollment of any kind at UGA.

- You are barred from the University of Georgia campus and all UGA-owned property, including but not limited to, all academic and administrative buildings, residence halls, dining facilities, campus green spaces, and recreational and athletic facilities.

- You are barred from any off-campus functions or events hosted by UGA-affiliated groups or organizations, including UGA athletics and UGA fraternity and sorority chapters.

- Should you be found to be present on campus, on University property, or at an off-campus event hosted by a UGA-affiliated group or organization, law enforcement will be notified and you may be subject to arrest for trespass.

## No Contact

For as long as _____ is a student at UGA, including during semester breaks, Maymester, and summer sessions when she may not be enrolled in classes, you are directed not to initiate and to avoid any contact with her, including staying away from her place of residence and any other locations where you know that she is likely to be. Prohibited contact includes, without limitation, in-person; phone, email, text, Facebook, Twitter or other electronic forms of communication/social media; any attempts to communicate with her through her friends or family members; and any communication by a third party with _____ on your behalf. Failure to comply with this no-contact directive may result in a harassment complaint against you to law enforcement.

## No Retaliation

The NDAH Policy prohibits retaliation against any person for making a report of sexual harassment to the EOO, for participating in the EOO's investigation of such a report, or for otherwise being associated with an EOO investigation. Retaliation includes intimidation, discrimination, harassment or any other adverse action against a person if motivated by a desire to punish that person for seeking the assistance of the Equal Opportunity Office or for cooperating with, or having any association with, an EOO investigation. Therefore, neither you nor anyone acting on your behalf may retaliate against _____ or against anyone else in connection with the EOO's investigation of _____ report or the outcome. Failure to comply with this no-retaliation instruction may result in a harassment complaint against you to law enforcement.

Warren Coombs
June 10, 2016
Page 4

### Appeal Rights

The NDAH Policy gives any party (i.e., the complainant(s) and the respondent(s)) the opportunity to appeal the outcome of the EOO's investigation to the University President. To do so, you must notify the Office of the President in writing that you want to appeal. This must be done within ten (10) working days (i.e., business days) from the date of receipt of this letter. Once the ten (10) day period has expired without your notifying the President's Office that you want to appeal, the findings become final and are not subject to further review. For more information on the appeal process, please see Section III.E.IV ("Right to Appeal") section of the NDAH Policy.

If you have any questions or concerns about the investigation or anything in this letter, please do not hesitate to contact me at (706) 542-4150 or cnorins@uga.edu.

Very truly yours,

Clare Norins
Assistant Director
Equal Opportunity Office

Cc.     Kim Stephens, Esq.
        Janyce Dawkins, EOO Director/Title IX Coordinator
        Jimmy Williamson, University Police Chief
        Jan Hathcote, University Registrar
        Kathy Pharr, Executive Assistant to the President
        Victor K. Wilson, Vice President for Student Affairs
        Bill McDonald, Dean of Students
        Eric Atkinson, Assistant Vice President for Student Engagement
        Michael Raeber, Office of Legal Affairs
        J. Barrett Malone, Office of Student Conduct



EXHIBIT
G

# Stephens Law Firm, LLC

1551 Jennings Mill Road, Suite.400-B
Bogart, Georgia 30622
Telephone: (706) 548-3933
Facsimile: (706) 548-6229

**REPLY TO:**

P.O. Box 1601
Athens, Georgia 30603-1601

June 22, 2016

Hon. Jere Morehead
President, University of Georgia
The Administration Building
220 S. Jackson Street
Athens, Georgia 30602

RE:     **Warren Coombs**
        Appeal of EEO Decisions of Violation of NDAH Policy

President Morehead:

I write this letter on behalf of and in conjunction with Warren Coombs to lodge his appeal of the decision of the EOO who found that Mr. Coombs violated the University of Georgia's Non-Discrimination and Harassment policy ("NDAH") by allegedly sexually assaulting two University of Georgia ("UGA") students. In conjunction with the EOO's finding, Clare Norrins expelled Mr. Coombs from UGA. In addition, because he was well past the midpoint of the spring semester when an interim suspension was imposed by the EOO, Mr. Coombs academic transcript reflects him receiving failing and/or incomplete grades that will become failing grades absent administrative action.

Mr. Coombs appeal is based upon the following:

(1) The investigation performed by the EOO did not warrant evidence from which it could be established by a preponderance of the evidence that Mr. Coombs violated the NDAH; and,

(2) The EOO failed to provide adequated due process as required by the United States and Georgia Constitution (as further evidenced by the Board of Regents statewide changes in policies and procedures in cases like Mr. Coombs). See Nash v. Auburn University, 812 F.2d 655 (1987).

In order to adequately address the issues in this case, Mr. Coombs respectfully requests 30 (thirty) days to provide a memorandum and materials supporting this appeal. Please let me know if this schedule is acceptable via electronic mail at stephenslaw.secure@gmail.com as soon as possible.

With kindest regards, I am

Very truly yours,

/s/Kim T. Stephens

KTS/kts

Cc:   Clare Norrins       (via electronic mail only)
      Arthur L. Tripp, Jr.   (via electronic mail only)



**EXHIBIT**
**H**

## The University **of** Georgia

Office of the President

<u>**SENT VIA ELECTRONIC MAIL**</u>

September 8, 2016

Mr. **Warren** Coombs
warren.coombs25@uga.edu

Dear Mr. Coombs:

This letter is in response to your June 10, 2016 appeals of the recent decisions rendered by the Equal Opportunity Office (EOO).

I have carefully considered your appeals and the record in both of these cases. Because I do not find a sufficient basis on which to conclude that any of the factors set forth in the Non-Discrimination and Anti-Harassment Policy for overturning or modifying an EOO decision have been met, I must uphold the EOO's finding in these cases. This is the final decision of the University of Georgia in these matters.

If you wish to appeal this decision, you may submit an application for discretionary review to Mr. Samuel C. Burch, Vice Chancellor for Legal Affairs, Board of Regents of the University System of Georgia, 270 Washington Street, Atlanta, Georgia 30334, within twenty (20) calendar days from the date of this letter. You should include a copy of this letter with your application to Mr. Burch.

Sincerely,

Jere W. Morehead
President

cc:    E. Janyce Dawkins, Director, Equal Opportunity Office
       Arthur H. Leed, Associate Director for Legal Affairs

The Administration Building • 220 South Jackson Street • Athens, Georgia 30602-1661
Telephone 706-542-1214 • Fax 706-542-0995
An Equal Opportunity/Affirmative Action/Veteran/Disability Institution



# *BENJAMIN ALLEN & ASSOCIATES, P. C.*
## *BENJAMIN ALLEN*
### *ATTORNEY AT LAW*



August 29, 2018

Mr. Samuel C. Burch
Vice Chancellor for Legal Affairs
Board of Regents of
    the University System of Georgia
270 Washington Street
Atlanta, GA 30334

Re:     **Warren Coombs**
        **Appeal of President's Decision**
        **Concerning Violation of NDAH Policy**

Dear Mr. Burch:

This letter is **Notice of Appeal of President Jere W. Morehead's** findings, and conclusions dated **September 8, 2016**, ruling **Warren Coombs** violated the school's **Non-Discrimination and Anti-Harassment Policy**, resulting in **Warren Coombs** being expelled from the **University of Georgia (herein after, "school")** and being permanently ineligible for future admission or enrollment at the school, **(the President's letter-ruling is attached hereto, marked as Exhibit A).**

**Warren Coombs' request for an out-of-time should be granted.**

This **Out-of-Time Appeal** is being requested; and the basis for granting the **Out-of-Time Appeal** is:

**The President's ruling was not timely given to Warren Coombs.**

The **President's** ruling was e-mailed to an address controlled by the school, on or about **September 8, 2016**.

However, there was a problem with the delivery of the ruling to **Warren Coombs**. The response was not sent to **Warren Coombs'** legal counsel, the person who

---

*1127 LANEY-WALKER BLVD., AUGUSTA, GEORGIA 30901*
**(Mailing Address:   P. O. Box 156, Augusta, GA 30903)**

*TELEPHONE (706) 724-7023*                    *FAX (706) 722-2095*

Mr. Samuel C. Burch
Vice Chancellor for Legal Affairs
Board of Regents of
    the University System of Georgia
August 29, 2018
Page 2

filed the appeal to the **President**.  And, nor was it mailed to the home address of **Warren Coombs**.  The school had his home address; and, the home address was used by the school at the beginning of this case.  **(See letter dated April 19, 2016, addressed to Warren Coombs, acknowledging receipt of a letter he wrote to the President's Office attached hereto, marked as Exhibit B.)**  The ruling was sent to a **"bad"** e-mail address; an e-mail address controlled by the school; an e-mail address that **Warren Coombs** could not access.  **(The school denied Warren Coombs access to the e-mail account on April 13, 2016, the day it suspended him.)**

The **President's** ruling was not given to **Warren Coombs** until sometime in **January 2017.  See Exhibit C attached hereto**.  According to the **President's** ruling, **Warren Coombs** had until **September 28, 2016** to appeal the decision.

Because the problem in delivering the **President's** ruling was caused by the school, **Warren Coombs** could not timely appeal the **President's** decision through no fault of his own.  Therefore, the request for an **Out-of-Time Appeal** should be granted in this matter.

**Warren Coombs' appeal has merit.**

The appeal of **Warren Coombs** is based on the school's lack of procedural safeguards in his case.  And because of the lack of procedural safeguards, the process was so fundamentally void of fairness that it created an environment that assured there would be a finding of guilt no matter what the facts in the case show.  The school failed to provide the following due process rights to assure fundamental fairness in this case, as follows:

   1) the school failed to grant **Warren Coombs** the right to an attorney;

   2) the school failed to grant **Warren Coombs** the right to present evidence in his defense throughout the process;

   3) the school failed to grant **Warren Coombs** the right to challenge the investigator's findings;

   4) the school failed to grant **Warren Coombs** the right to **"question"** the accuser;

Mr. Samuel C. Burch
Vice Chancellor for Legal Affairs
Board of Regents of
    the University System of Georgia
August 29, 2018
Page 3

    5) the school failed to grant **Warren Coombs** the right to a hearing before an impartial hearing officer **(or panel)**, to decide his guilt or innocence.

**The school failed to grant Warren Coombs the right to an attorney.**

In this case, **Warren Coombs** obtained legal counsel, and his legal counsel communicated with the school. The school ignored the demands, and concerns of the legal counsel. The school failed and refused to communicate with **Coombs'** legal counsel.

And, the school never communicated to legal counsel the ruling of the school's **President**.

**The school failed to grant Warren Coombs the right to challenge the investigator's findings.**

The failure and refusal to allow the data collected to be challenged makes the school's action to appear to be no more than an attempt to justify a conclusion it reached without deciding what is the truth. The school before gathering any data and before speaking with **Warren Coombs**, using only the bare allegations of the complaining witness decided to suspend **Warren Coombs**. The school gathered its data to justify the suspension and subsequent expulsion of **Warren Coombs**, not to determine the truth of the complaining witness' complaint.

Not only did the school refuse to allow **Warren Coombs** to challenge the data gathered, it did not make the findings of the investigator available for review by him for comment.

**The school failed to grant Warren Coombs the right to question his accuser.**

In this case, the credibility of the complaining witness is key to deciding whether **Warren Coombs** violated any school policy. The truth of the accuser's statement of wrongdoing can only be determined if she is **"questioned" (tested by rigorous questioning and evaluation for discovery of the truth)**. The right to question the accuser was not made available to **Warren Coombs**.

*1127 LANEY-WALKER BLVD., AUGUSTA, GEORGIA 30901*
**(Mailing Address:  P. O. Box 156, Augusta, GA 30903)**

*TELEPHONE (706) 724-7023*        *FAX (706) 722-2095*

Mr. Samuel C. Burch
Vice Chancellor for Legal Affairs
Board of Regents of
   the University System of Georgia
August 29, 2018
Page 4

**The school failed to grant Warren Coombs the right to a hearing before an independent body.**

In this case the fact-gathering body, and the body tasked with deciding the outcome of the case are one and the same; it is the school. At a minimum to provide an opportunity for fairness, the school should have accorded **Warren Coombs** a hearing before an independent decision-making body, to present his defense and to question the accuser's accusation; and to challenge the findings of the investigator; and to argue his case before any conclusion was reached to take away his property right **(educational opportunity at Georgia's flagship institution of higher learning)**.

**The Board of Regents for the University System of Georgia recognizes the need for fundamental fairness.**

Recognizing the need for fundamental fairness, the **Board of Regents** for the **University System of Georgia** established a policy in **2017 (see Exhibit D attached hereto)** to address what it says is required to meet minimum standards in sexual misconduct cases like **Warren Coombs**. The **Board's** policy now requires that a school shall do what is being asked for in **Warren Coombs'** appeal. To insure the discovery of the truth protecting a student's property right (right to an education), the **Board** changed the burden of proof **(standard of review)** for cases involving suspension and expulsions to the higher standard of review of **"substantial evidence."**

Recognizing the need for a student charged with violating a school policy to have fundamental rights of fairness **(due process)**, the **Board of Regents** for the **University Systems of Georgia** in **2017** adopted a policy that completely changed the way schools are to handle complaints of sexual misconduct. The **"new" Board's** policy allows for the accused to be provided with copies of the accuser's statements, reports of the investigator and other information that is to be used to establish guilt. Further, the **"new" Board's** policy allows for an accused to be heard on the question of whether his or her presence on campus poses a danger, before he or she is suspended. And, the **"new" Board's** policy gives the accused the right to a hearing to challenge the investigator's report, and to question his accuser in a hearing in search for the truth.

And, the **"new" Board's** policy says the investigator and the person deciding the outcome of the case, cannot be the same person. And, most importantly, the **Board** changed the standard of review to be followed when determining guilt or innocence of the accused in cases when a decision may result in the suspension or expulsion of the accused. The standard of review was changed from **"preponderance of evidence"**, to **"substantial evidence."**

Mr. Samuel C. Burch
Vice Chancellor for Legal Affairs
Board of Regents of
   the University System of Georgia
August 29, 2018
Page 5

None of the procedural rights required by the **"new" Board's** policy were given to **Warren Coombs** by the school.  By adopting the **"new"** policy, the **Board** is saying the procedural requirements set out are the minimum needed to provide an accused with due process **(rights of fundamental fairness)**.  Arguably, because **Warren Coombs** was **NOT** given these rights; he was not given his due process rights; and his case should be reconsidered in light of the **"new" Board's** policy.

**The accuser's criminal case against Warren Coombs has been dismissed.**

The **Clarke County District Attorney's Office** presented the accuser's case to the **Grand Jury**.  And the **Grand Jury** refused to indict, find that **Warren Coombs** is guilty of any wrongdoing.  Arguably the **Grand Jury** did not find the accuser's statements to be credible.  **(See copy of no-bill attached hereto, marked as Exhibit E.)**

**Conclusion**

For the above stated reasons, it is demanded that **Warren Coombs** be allowed to proceed with his **Out-of-Time Appeal** of the school's decision of **September 8, 2016.**

Sincerely,

BENJAMIN ALLEN

BA/me

Enclosures

Attachments

cc Warren Coombs



The University of Georgia

Office of the President

<u>SENT VIA ELECTRONIC MAIL</u>

September 8, 2016

Mr. Warren Coombs
warren.coombs25@uga.edu

Dear Mr. Coombs:

This letter is in response to your June 10, 2016 appeals of the recent decisions rendered by the Equal Opportunity Office (EOO).

I have carefully considered your appeals and the record in both of these cases. Because I do not find a sufficient basis on which to conclude that any of the factors set forth in the Non-Discrimination and Anti-Harassment Policy for overturning or modifying an EOO decision have been met, I must uphold the EOO's finding in these cases. This is the final decision of the University of Georgia in these matters.

If you wish to appeal this decision, you may submit an application for discretionary review to Mr. Samuel C. Burch, Vice Chancellor for Legal Affairs, Board of Regents of the University System of Georgia, 270 Washington Street, Atlanta, Georgia 30334, within twenty (20) calendar days from the date of this letter. You should include a copy of this letter with your application to Mr. Burch.

Sincerely,

Jere W. Morehead
President

cc:    E. Janyce Dawkins, Director, Equal Opportunity Office
       Arthur H. Leed, Associate Director for Legal Affairs

The Administration Building • 320 South Jackson Street • Athens, Georgia 30602-1661
Telephone 706-542-1214 • Fax 706-542-0995
An Equal Opportunity/Affirmative Action/Veteran/Disability Institution



## The University of Georgia

Office of the President

April 19, 2016

Mr. Warren ~~Combs~~
1371 Waterston Drive
Evans, Georgia 30809

Dear Mr. Combs:

On behalf of the Office of the President, I write to acknowledge receipt of your letter appealing the recent decision of the Equal Opportunity Office. The Office of the President will review your appeal and notify you once a decision is made.

Sincerely,

Arthur L. Tripp
Assistant to the President

*This came in TG mail on 22 April 2016*



From: **Warren Coombs** warren555@comcast.net
Subject:
Date: August 19, 2018 at 3:42 PM
To: Warren Coombs warren555@comcast.net

 Verizon   LTE                    **2:52 PM**                     29%

< 

**M**

My Lawyer

Oct 10, 2016, 10:05 AM

> Morning, how is the case going, have you heard from the police again?, Warren

Oct 10, 2016, 11:44 AM

I haven't heard from UGA or police. I'm a little surprised UGA hasn't made a decision. Don't think it means anything though.

> I apreciate the update, im really ready to move forward with my life in the military and this case is holding my life back. I can

not  wait for this to be over, and I highly apreciate your hard work, Thanks

Oct 12, 2016, 10:58 AM

No word yet.

  

 

| Verizon   LTE          **2:52 PM**          ↗ 29% 🔋

 

My Lawyer

Nov 10, 2016, 10:13 AM

Any word on the case?

Nov 21, 2016, 8:52 AM

Hey, any word on the case? have they said or came back with anything?

Nov 21, 2016, 10:56 AM

Nothing

ok 

Dec 19, 2016, 1:13 PM

Have yu heard a response from uga about the appeal? n Has the police said anything?

Dec 19, 2016, 7:15 PM

Sent email today

to the school or the police

   

Verizon   LTE          2:52 PM          30%

 

My Lawyer

Sent email today

Sent email today

to the school or the police department?

Dec 20, 2016, 1:53 PM

Both.

Jan 12, 2017, 2:55 PM

please call me

Jan 20, 2017, 11:00 AM

Did you get the Decision from the Presidents Office?

Jan 22, 2017, 10:32 AM

Office of the President

**SENT VIA ELECTRONIC MAIL**

September 8, 2016

Mr. Warren Coombs
warren.coombs25@juno.co.

Dear Mr. Coombs:

This letter is in response to your June 10, 2016 appeals of the recent decisions rendered by the Equal Opportunity Office (EOO).

I have carefully considered your appeals and the record in both of these cases. Because I do not find a sufficient basis on which to conclude that any of the factors set forth in the Non-Discrimination and Anti-Harassment Policy for overturning or modifying an EOO decision have

**STATE OF GEORGIA**   )
           )
**COUNTY OF RICHMOND**  )

## <u>AFFIDAVIT</u>

Before the undersigned officer who is authorized to administer oaths comes **WARREN COOMBS**, and being duly sworn states the following statements are true, and correct:

1. That he is a party to a **2016** case resulting in him being expelled from the **University of Georgia** and he was permanently ruled to be ineligible for future admission or enrollment at the school for an alleged violation of the school's **NDAH Policy**.

2. He, through his attorney appealed the findings and conclusions of the school's **Equal Opportunity Office**.

3. The appeal was reviewed by the **Office of the President,** and a decision dated **September 8, 2016** was rendered by the **President** of the **University of Georgia**.

4. The **President's** decision was sent to my school's e-mail address, warren.coombs25@uga.edu.

5. I did not have access to my school's e-mail address.  I was blocked by the school from accessing the e-mail address.

6. I received the **President's** decision in **January, 2017** after calling the **President's Office** and asking when would a decision be made in my case.

7. A copy of the decision was sent at my request, to my personal e-mail address, warren555@comcast.net.

The statements herein are true and correct.

**IT IS SO STATED**, this _23_ day of _August_ , 2018.

_____ (Seal)
**WARREN COOMBS**

Sworn to and subscribed before me.

This _23_ day of _August_ , 2018.

_____
NOTARY PUBLIC
My Commission Expires: _Sept 26, 2020_

2



# BOARD OF REGENTS POLICY MANUAL
Official Policies of the University System of Georgia

# 6.7 Sexual Misconduct Policy

In accordance with Title IX of the Education Amendments of 1972 ("Title IX"), the University System of Georgia (USG) does not discriminate on the basis of sex in any of its education programs or activities or in employment. The USG is committed to ensuring a safe learning and working environment for all members of the USG community. To that end, this Policy prohibits sexual misconduct, as defined herein.

In order to reduce incidents of sexual misconduct, USG institutions are required to provide prevention tools and to conduct ongoing awareness and prevention programming and training for the campus community. Such programs will promote positive and healthy behaviors and educate the campus community on consent, sexual assault, alcohol use, dating violence, domestic violence, stalking, bystander intervention, and reporting.

When sexual misconduct does occur, all members of the USG community are strongly encouraged to report it promptly through the procedures outlined in this Policy. The purpose of this Policy is to ensure uniformity throughout the USG in reporting and addressing sexual misconduct.

## Reporting Structure

All Equal Opportunity directors and others having responsibility for coordination of Title IX ("Coordinators") at USG institutions shall have a direct reporting relationship to both the institution's President or the President's

↑ Top

designee and the USG System Director for Equity and Investigations ("System Director"). The President of each institution shall determine the organizational and operating reporting relationships for the Coordinators at the institution and exercise oversight of institutional issues relating to sexual misconduct. However, the System Director shall have authority to direct the Coordinators' work at each institution as needed to address system-wide issues or directives. The President of each institution shall consult with the System Director on significant personnel actions involving Coordinators, to include but not be limited to, appointment, evaluation, discipline, change in reporting structure, and termination.

# 6.7.1 Definitions and Prohibited Conduct

**Community:** Students, faculty, and staff, as well as contractors, vendors, visitors and guests.

**Complainant:** An individual lodging a complaint. The complainant may not always be the alleged victim.

**Consent:** Words or actions that show a knowing and voluntary willingness to engage in mutually agreed-upon sexual activity. Consent cannot be gained by force, intimidation or coercion; by ignoring or acting in spite of objections of another; or by taking advantage of the incapacitation of another where the respondent knows or reasonably should have known of such incapacitation. Minors under the age of 16 cannot legally consent under Georgia law.

Consent is also absent when the activity in question exceeds the scope of consent previously given. Past consent does not imply present or future consent. Silence or an absence of resistance does not imply consent.

Consent can be withdrawn at any time by either party by using clear words or actions.

**Dating Violence:** Violence committed by a person who is or has been in a social relationship of a romantic or intimate nature with the alleged victim. Dating violence includes, but is not limited to, sexual or physical abuse or the threat of such abuse. Dating violence does not include acts covered under the definition of domestic violence.

**Domestic Violence:** Violence committed by a current or former spouse or intimate partner of the alleged victim; by a person with whom the alleged victim shares a child in common; by a person who is cohabitating with, or has cohabitated with, the victim as a spouse or intimate partner, or by a person similarly situated to a spouse of the alleged victim.

**Incapacitation:** The physical and/or mental inability to make informed, rational judgments. It can result from mental disability, sleep, involuntary physical restraint, status as a minor under the age of 16, or from intentional or unintentional taking of alcohol and/or other drugs. Whether someone is incapacitated is to be judged from the perspective of an objectively reasonable person.

**Nonconsensual Sexual Contact:** Any physical contact with another person of a sexual nature without the person's consent. It includes but is not limited to touching (or penetrating) of a person's intimate parts (such as genitalia, groin, breasts, or buttocks); touching (or penetrating) a person with one's own intimate parts; or forcing a person to touch his or her own or another person's intimate parts.

**Confidential Employees:** Institution employees who have been designated by the Institution's Coordinator to talk with an alleged victim in confidence. Confidential Employees must only report that the incident occurred and provide date, time, location, and name of alleged respondent (if known) without revealing any information that would personally identify the alleged victim. This minimal reporting must be submitted in compliance with Title IX and the Jeanne Clery Disclosure of Campus Security Policy and Campus Crime Statistics Act ("Clery Act"). Confidential Employees may be required to fully disclose details of an incident in order to ensure campus safety.

**Privileged Employees:** Individuals employed by the institution to whom a complainant or alleged victim may talk in confidence, as provided by law. Disclosure to these employees will not automatically trigger an investigation against the complainant's or alleged victim's wishes. Privileged Employees include those providing counseling, advocacy, health, mental health, or sexual-assault related services (e.g., sexual assault resource centers, campus health centers, pastoral counselors, and campus mental health centers) or as otherwise provided by applicable law. Exceptions to confidentiality exist where the conduct involves suspected abuse of a minor (in Georgia, under the age of 18) or otherwise provided by law, such as imminent threat of serious harm.

**Respondent:** Individual who is alleged to have engaged in conduct that violates this Policy.

**Responsible Employees:** Those employees who must promptly and fully report complaints of or information regarding sexual misconduct to the Coordinator. Responsible Employees include any administrator, supervisor, faculty member, or other person in a position of authority who is not a Confidential Employee or Privileged Employee. Student employees who serve in a supervisory, advisory, or managerial role are in a position of authority for purposes of this Policy (e.g., teaching assistants, residential assistants, student managers, orientation leaders).

**Sexual Exploitation:** Taking non-consensual or abusive sexual advantage of another for one's own advantage or benefit, or for the benefit or advantage of anyone other than the one being exploited.

Examples of sexual exploitation may include, but are not limited to, the following:

1. Invasion of sexual privacy;
2. Prostituting another individual;
3. Non-consensual photos, video, or audio of sexual activity;
4. Non-consensual distribution of photo, video, or audio of sexual activity, even if the sexual activity was consensual;
5. Intentional observation of nonconsenting individuals who are partially undressed, naked, or engaged in sexual acts;
6. Knowingly transmitting an STD or HIV to another individual through sexual activity;
7. Intentionally and inappropriately exposing one's breasts, buttocks, groin, or genitals in non-consensual circumstances; and/or
8. Sexually-based bullying.

**Sexual Harassment:** Unwelcome verbal, nonverbal, or physical conduct, based on sex or on gender stereotypes, that is implicitly or explicitly a term or condition of employment or status in a course, program, or activity; is a basis for employment or educational decisions; or is sufficiently severe, persistent, or pervasive to interfere with one's work or educational performance creating an intimidating, hostile, or offensive work or learning environment, or interfering with or limiting one's ability to participate in or to benefit from an institutional program or activity.

**Sexual Misconduct:** Includes, but is not limited to, such unwanted behavior as dating violence, domestic violence, nonconsensual sexual contact, sexual exploitation, sexual harassment and stalking.

**Stalking:** Engaging in a course of conduct directed at a specific person that would cause a reasonable person to fear for his or her safety or the safety of others or suffer substantial emotional distress. Course of conduct means two or more acts, including, but not limited to, acts in which the stalker directly, indirectly, or through third parties, by any action, method, device, or means, follows, monitors, observes, surveils, threatens, or communicates to or about a person, or interferes with person's property. Reasonable person means a reasonable person under similar circumstances and with similar identities to the victim. Substantial emotional distress means significant mental suffering or anguish that may but does not necessarily, require medical or other professional treatment or counseling.

# 6.7.2 Reporting Sexual Misconduct

A complainant of sexual misconduct may, but need not, file a criminal complaint with law enforcement officials; file a misconduct report with a Responsible Employee or Coordinator; or file both. A report may be filed anonymously, although anonymous reports may make it difficult for the institution to address the complaint. Any individual who believes that he or she has been a victim of sexual misconduct is encouraged to report allegations of sexual misconduct promptly.

All reports of sexual misconduct alleged to have been committed by a student must be handled consistently with requirements set forth in Section 4.6.5, Standards for Institutional Student Conduct Investigation and Disciplinary Proceedings (/policymanual/section4/C332/#p4.6.5_standards_for_institutional_student_conduct_investigation).

All reports of sexual misconduct alleged to have been committed by a non-student member of the institution community will be addressed and/or resolved through the institution's and the Board of Regents' applicable policies for discipline of non-students.

# 6.7.2 (A) Institutional Reports

Complainants of sexual misconduct who wish to file a report with the institution should notify a Responsible Employee or the Coordinator. Responsible Employees informed about sexual misconduct allegations involving any student should not attempt to resolve the situation, but must notify and report all relevant information to the Coordinator as soon as practicable. Confidential Employees are not bound by this requirement but may be required to report limited information about incidents without revealing the identities of the individuals involved to the Title IX Coordinator, consistent with their ethical and legal obligations. All members of the University System of Georgia institutions' communities are encouraged to report incidents of sexual misconduct promptly.

The Coordinator's identity and contact information shall be published by each institution prominently on the institution's website, as well as in any relevant publication. Each institution may choose to have Deputy Title IX Coordinators to whom reports may be made, as well. Institutions should encourage complainants to report their complaints in writing, though oral complaints should also be accepted, taken seriously, and investigated, to the extent possible. While complaints should be made as quickly as possible following an alleged incident of sexual misconduct, all reports should be accepted regardless of when reported.

The Coordinator shall refer to the System Director any allegation(s) of sexual misconduct that could, standing alone as reported, lead to the suspension or expulsion of the respondent(s). The System Director will work with the institution to determine whether any interim measure(s) are necessary and to assign an investigator who will work under the direction of the System Director or designee, if directed by System Director. If an allegation is not initially identified as one that would lead to the suspension or expulsion of the respondent(s), but facts arise during the course of the investigation that would require transfer to the System Director, the Title IX Coordinator shall transfer oversight to the System Director or designee. The System Director shall have the discretion to retain oversight or transfer oversight to the institution.

# 6.7.2 (B) Law Enforcement Reports

Because sexual misconduct may constitute criminal activity, a complainant also has the option, should he or she so choose, of filing a report with campus or local police, for his or her own protection and that of the surrounding community. The institution may assist the complainant in reporting the situation to law enforcement officials.

Complainants considering filing a report of sexual misconduct with law enforcement should preserve any evidence of sexual misconduct, including, but not limited to, the following:

1. Clothing worn during the incident including undergarments;
2. Sheets, bedding, and condoms, if used;
3. Lists of witnesses with contact information;
4. Text messages, call history, social media posts;
5. Pictures of injuries; and/or
6. Videos.

# 6.7.2 (C) Anonymous Reports

Each institution shall provide a mechanism by which individuals can report incidents of alleged sexual misconduct anonymously. Complainants should understand, however, that it will be more difficult for the institution to investigate and to take action upon anonymous reports.

# 6.7.2 (D) Retaliation

Anyone who, in good faith, reports what he or she believes to be misconduct under this Policy, or who participates or cooperates in, or is otherwise associated with any investigation, shall not be subjected to retaliation. Anyone who believes that he or she has been the target of retaliation for reporting, participating, cooperating in, or otherwise being associated with an investigation should immediately contact the Coordinator for the institution. Any person found to have engaged in retaliation in violation of this Policy shall be subject to disciplinary action.

# 6.7.2 (E) False Complaints

Individuals are prohibited from intentionally giving false statements to a system or institution official. Any person found to have intentionally submitted false complaints, accusations, or statements, including during a hearing, in

violation of this Policy shall be subject to appropriate disciplinary action (up to and including suspension or expulsion) and adjudicated under the student conduct policy.

## 6.7.2 (F) Amnesty

Individuals should be encouraged to come forward and to report sexual misconduct notwithstanding their choice to consume alcohol or to use drugs. Information reported by an individual during an investigation concerning use of drugs or alcohol will not be used against the particular individual in a disciplinary proceeding or voluntarily reported to law enforcement; however, individuals may be provided with resources on drug and alcohol counseling and/or education, as appropriate.

# 6.7.3 Handling Reports of Sexual Misconduct

## 6.7.3 (A) Support Services

Once a student or employee makes a complaint or receives notice that a complaint has been made against him or her, or the coordinator otherwise learns of a complaint of sexual misconduct. The complainant, respondent and alleged victim (where applicable) should receive written information about support services, such as counseling, advocacy, housing assistance, academic support, disability services, health and mental services, and legal assistance, available at the student's institution.

Information on support services will be provided regardless as to whether an individual elects to go forward with filing a formal complaint of sexual misconduct or with notifying law enforcement. Information on support services will also be provided to students and employees, regardless of where the alleged misconduct occurs.

Available support services should also be listed on the institution's Title IX website.

## 6.7.3 (B) Interim Measures

Interim measures may be undertaken at any point after the institution becomes aware of an allegation of sexual misconduct and should be designed to protect the alleged victim and the community.

Before an interim suspension is issued, the institution must make all reasonable efforts to give the respondent the opportunity to be heard, consistent with the provisions in Policy 4.6.5.

# 6.7.3 (C) Jurisdiction

Each USG institution shall take necessary and appropriate action to protect the safety and well-being of its community. Sexual misconduct allegedly committed by a student are addressed by this Policy when the misconduct occurs on institution property, or at institution-sponsored or affiliated events, or off-campus, as defined by the institution's student conduct policies.

# 6.7.3 (D) Advisors

Both the alleged victim and respondent, as parties to the matter, shall have the opportunity to use an advisor (who may or may not be an attorney) of the party's choosing at the party's own expense for the express purpose of providing advice and counsel, pursuant to the provisions of Policy 4.6.5.

# 6.7.3 (E) Informal Resolutions

Allegations of sexual misconduct may be resolved informally, without a determination of misconduct, if all of the following are met:

1. When complainant(s) and respondent agree to an informal resolution;
2. When the initial allegation could not result in expulsion;
3. When the complainant(s) and respondent(s) agree to the terms of the informal resolution; and
4. When the investigator concludes that informal resolution is in the best interest of the parties and the institution's community.

The alleged victim(s) and respondent(s) have the option to end informal resolution discussions and request a formal process at any time before the terms of an informal resolution are reached. However, matters resolved informally shall not be appealable.

# 6.7.3 (F) Timeframe

Efforts will be made to complete the investigation within a reasonable timeframe, which will be determined based upon the allegations, availability of witnesses and/or evidence, etc. in a particular case. When the timeframe will extend past the reasonable timeframe, the parties will be informed of the delay and the reason for the delay. The investigator shall keep the parties informed of the status of the investigation.

# 6.7.4 Investigations

All sexual misconduct investigations involving a student respondent, whether overseen by the institution's Coordinator or the System Director, shall follow the investigation process set forth in <u>Section 4.6.5, Standards for Institutional Student Conduct Investigation and Disciplinary Proceedings (/policymanual/section4/C332/#p4.6.5_standards_for_institutional_student_conduct_investigation)</u>.

# 6.7.5 Hearings, Possible Sanctions and Appeals

All sexual misconduct hearings, sanctions, and appeals involving a student respondent, whether overseen by the institution's Coordinator or the System Director, shall follow the investigation process set forth in <u>Section 4.6.5, Standards for Institutional Student Conduct Investigation and Disciplinary Proceedings (/policymanual/section4/C332/#p4.6.5_standards_for_institutional_student_conduct_investigation)</u>.

All sexual misconduct adjudication involving an employee respondent, shall be addressed utilizing the institution's employment policies and procedures.

# BOARD OF REGENTS POLICY MANUAL
Official Policies of the University System of Georgia

# 4.6 Discipline of Students

## 4.6.1 [Reserved]

[Reserved]

# 4.6.2 Violations of State or Federal Law

A student in any University System of Georgia (USG) institution who is charged with, or indicted for, a felony or crime involving moral turpitude may be suspended pending the disposition of the criminal charges against him or her. Upon request, the student shall be accorded a hearing, as provided in this Policy Manual and any related institution policy, where he or she shall have the burden of establishing that his or her continued presence as a member of the student body will not be detrimental to the health, safety, welfare, or property of other students or members of the campus community or to the orderly operation of the institution. Upon final conviction, the student shall be subject to appropriate disciplinary action.

↑ Top

# 4.6.3 Student Organization Responsibility for Drug Abuse

The use of marijuana, controlled substances, or other illegal or dangerous drugs constitutes a serious threat to the public health, welfare, and academic achievement of students enrolled in the University System of Georgia (USG). Therefore, all student organizations, including but not limited to societies, fraternities, sororities, clubs, and similar groups of students which are affiliated with, recognized by, or which use the facilities under the jurisdiction of USG institutions, are responsible for enforcing compliance with local, state, and federal laws by all persons attending or participating in their respective functions and affairs, social or otherwise.

As provided by the Student Organization Responsibility for Drug Abuse Act, any such student organization which, through its officers, agents, or responsible members, knowingly permits, authorizes, or condones the manufacture, sale, distribution, possession, serving, consumption or use of marijuana, controlled substances, or other illegal or dangerous drugs at any affair, function, or activity of such student organization, social or otherwise, violates the laws of this State and, after being afforded the constitutional requirements of due process, shall have its recognition as a student organization withdrawn and shall be expelled from the campus for a minimum of one calendar year from the date of determination of guilt.

Such organization shall also be prohibited from using any property or facilities of the institution for a period of at least one year. Any lease, rental agreement, or other document between the Board of Regents or the institution and the student organization that relates to the use of the property leased, rented, or occupied shall be terminated for the student organization knowingly having permitted or authorized the unlawful actions described above.

All sanctions imposed by this policy shall be subject to review procedures authorized by the Board of Regents' Policy on Application for Discretionary Review.

An appeal to the Board of Regents shall not defer the effective date of the adverse action against the student organization pending the Board's review unless the Board so directs. Any such stay or suspension by the Board shall expire as of the date of the Board's final decision on the matter.

# 4.6.4 Alcohol and Drugs on Campus

In accordance with Georgia laws governing the manufacture, sale, use, distribution, and possession of alcoholic beverages, illegal drugs, marijuana, controlled substances, or dangerous drugs on college campuses and elsewhere, including the Drug-Free Postsecondary Education Act of 1990, the Board of Regents encourages its institutions to adopt programs designed to increase awareness of the dangers involved in the use of alcoholic beverages, marijuana, or other illegal or dangerous drugs by University System of Georgia (USG) students and employees. Such programs shall stress individual responsibility related to the use of alcohol and drugs on and off the campus.

To assist in the implementation of such awareness programs and to enhance the enforcement of state laws at USG institutions, each institution shall adopt and disseminate comprehensive rules and regulations consistent with local, state, and federal laws concerning the manufacture, distribution, sale, possession, or use of alcoholic beverages, marijuana, controlled substances, or dangerous drugs on campus and at institutionally-approved events off campus.

Disciplinary sanctions for the violation of such rules and regulations shall be included as a part of each institution's disciplinary code of student conduct. Disciplinary sanctions for students convicted of a felony offense involving the manufacture, distribution, sale, possession, or use of marijuana, controlled substances, or other illegal or dangerous drugs shall include the forfeiture of academic credit and the temporary or permanent suspension or expulsion from the institution. All sanctions imposed by the institution shall be subject to review procedures authorized by Board of Regents' Policy on Application for Discretionary Review.

The rules and regulations adopted by each institution shall also provide for relief from disciplinary sanctions previously imposed against one whose convictions are subsequently overturned on appeal or otherwise.

7/31/2018
Case 3:19-cv-00054-CAR   Document 1-1   Filed 05/30/19   Page 55 of 83
Board of Regents Policy Manual | University System of Georgia

# 4.6.5 Standards for Institutional Student Conduct Investigation and Disciplinary Proceedings

(This policy will take effect Fall Semester, 2017)

This Policy establishes minimum procedural standards for investigations and resolutions of alleged student conduct violations, which each institution must incorporate into its respective student conduct policies. The purpose of this Policy is to ensure uniformity in the quality of investigations while providing for due process that affords fairness and equity in all student conduct investigations.

These procedures apply to matters relating to student misconduct, except matters relating to academic dishonesty, which may be covered under separate institutional policies. Institutions shall inform students of their procedures governing student misconduct complaints and investigations.

## 4.6.5.1 Reports of Student Misconduct

Institutions must provide clear notice to students and other campus community members as to how to file complaints of misconduct.

Complaints to the appropriate department and/or person(s) should include as much information as possible – such as: (1) the type of misconduct alleged; (2) the name and contact information of the individual(s) accused of misconduct; (3) the date(s), time(s), and place(s) of the misconduct; (4) the name(s) and contact information of any individual(s) with knowledge of the incident; (5) whether any tangible evidence has been preserved; and (6) whether a criminal complaint has been made.

Information from complaints may be shared as necessary to investigate and to resolve the alleged misconduct. Complaints shall be investigated and resolved as outlined below. The need to issue a broader warning to the

community in compliance with the Jeanne Clery Disclosure of Campus Security Policy and Campus Crime Statistics Act ("Clery Act") shall be assessed in compliance with federal law.

Where appropriate, complainants may file a law enforcement report as well as an institutional report, but are not required to file both.

1. **Confidentiality:** Where a complainant or alleged victim requests that his or her identity be withheld or the allegation(s) not be investigated, the institutions should consider whether or not such request(s) can be honored while still providing a safe and nondiscriminatory environment for the institution and conducting an effective review of the allegations. The institution should inform the requesting party that the institution cannot guarantee confidentiality.

2. **Retaliation:** Anyone who, in good faith, reports what she or he believes to be student misconduct participates or cooperates in, or is otherwise associated with any investigation, shall not be subjected to retaliation. Anyone who believes he or she has been the target of retaliation for reporting, participating or cooperating in, or otherwise being associated with an investigation should immediately contact the appropriate department or individual(s) for that institution. Any person found to have engaged in retaliation in violation of the student conduct policy shall be subject to disciplinary action, pursuant to the institution's policy.

3. **False Complaints/Statements:** Individuals are prohibited from intentionally giving false statements to an institution official. Any person found to have intentionally submitted false complaints, accusations, or statements, including during a hearing, in violation of this Policy shall be subject to appropriate disciplinary action (up to and including suspension or expulsion) and adjudicated under the student conduct policy.

4. **Amnesty:** Students should be encouraged to come forward and report violations of the law and/or student code of conduct notwithstanding their own improper use of alcohol or drugs. Any student(s) who voluntarily and in good faith reports information to college or university faculty or staff prior to any investigation concerning use of drugs or alcohol will not be voluntarily reported to law enforcement; nor will information that the individual provides be used against the individual for purposes of conduct violations. Nevertheless, these students may be required to meet with staff members in regard to the incident and may be required to participate in appropriate educational program(s). The required participation in an educational program under this amnesty procedure will not be considered a sanction.

Nothing in this amnesty procedure shall prevent a university staff member who is otherwise obligated by law (the Clery Act) to report information or statistical data as required.

# 4.6.5.2 Process for Investigating and Resolving Disputed Reports

**Jurisdiction:** Each institution shall take necessary and appropriate action to protect the safety and well-being of its community. Accordingly, student conduct should be addressed when such acts occur on institution property, at institution-sponsored or affiliated events, or otherwise violate the institution's student conduct policies, regardless as to where such conduct occurs. If the student has admitted responsibility and has voluntarily decided to participate in the informal process, the procedures outlined in this section will not apply.

**Access to Advisors:** The respondent and alleged victim (where applicable), as parties to these proceedings, shall have the right to have an advisor (who may or may not be an attorney) of his or her choosing, and at his or her own expense, for the express purpose of providing advice and counsel. The advisor may be present during meetings and proceedings during the investigatory and/or resolution process at which his or her advisee is present. The advisor may advise his or her advisee in any manner, including providing questions, suggestions, and guidance on responses to any questions posed to the advisee, but shall not participate directly during the investigation or hearing process. The institution shall not prohibit family members of a party from attending the hearing if the party requests such attendance, but may limit each participant to having two family members present.

**Initial Evaluation of Student Conduct Reports:** Regardless of how an institution becomes aware of misconduct, the institution shall ensure a prompt, fair, and impartial review and resolution of complaints alleging student misconduct. Where a report of student misconduct has been made to the appropriate department and/or person, the institution shall review the complaint to determine whether the allegation(s) describes conduct in violation of the institution's policies and/or code of conduct. If the reported conduct would not be a violation of the institution's policies and/or code of conduct, even if true, then the report should be dismissed. Otherwise, a prompt, thorough, and impartial investigation, and review shall be conducted into each complaint received to determine whether charges against the respondent should be brought.

Where a report of student misconduct alleges sexual misconduct or other forms of harassment and/or discrimination, the report will be referred to and the investigation will be conducted through or as directed by the appropriate office trained and equipped to investigate such matters.

Any report that involves allegation(s) of conduct that could lead to the suspension or expulsion of the respondent(s) in an initial violation must be promptly reported to the System Director by the institution. The System Director will work with the institution to determine whether any interim measure(s) are necessary, to assign an investigator and will collaboratively supervise the investigation with the appropriate institution professional (e.g., the Title IX Coordinator, Dean of Students). If an allegation is not initially identified as one that could lead to suspension or expulsion of the respondent(s), but facts arise during the course of the investigation that would require oversight from the System Director, then the institution shall report that case to the System Director or her designee prior to proceeding.

## Interim Measures

Interim measures may be provided by the institution at any point during an investigation and should be designed to protect the alleged victim and the community. To the extent interim measures are imposed, they should minimize the burden on both the alleged victim and the respondent, where feasible. Interim measures may include, but are not limited to:

1. Change of housing assignment;
2. Issuance of a "no contact" directive;
3. Restrictions or bars to entering certain institution property;
4. Changes to academic or employment arrangements, schedules, or supervision;
5. Interim suspension; and
6. Other measures designed to promote the safety and well-being of the parties and the institution's community.

An interim suspension should only occur where necessary to maintain safety and should be limited to those situations where the respondent poses a serious and immediate danger or threat to persons or property. In making such an assessment, the institution should consider the existence of a significant risk to the health or safety of the alleged victim or the campus community; the nature, duration, and severity of the risk; the probability of potential injury; and whether less restrictive means can be used to significantly mitigate the risk.

Before an interim suspension is issued, the institution must make all reasonable efforts to give the respondent the opportunity to be heard on whether his or her presence on campus poses a danger. If an interim suspension is issued, the terms of the suspension take effect immediately. Upon request, the respondent will have an opportunity to be heard by the respective conduct officer, Title IX Coordinator, or System Director, as appropriate, within three business days in order to determine whether the interim suspension should continue.

## Investigation

Throughout any investigation and resolution proceedings, a party shall receive written notice of the alleged misconduct, shall be provided an opportunity to respond, and shall be allowed to remain silent or otherwise not participate in or during the investigation and resolution process without an adverse inference resulting. If a party chooses to remain silent or otherwise not participate in an investigation, the investigation may still proceed and policy charges may still result and be resolved. Additionally, in any investigation involving allegations of sexual misconduct, timely notice of meetings shall be provided to each party of any meeting at which the complainant, respondent or alleged victim may be present. Timely and equal access to information that will be used during the investigation will be provided to the complainant, respondent and alleged victim (where applicable).

Where the potential sanctions for the alleged misconduct may involve a suspension or expulsion (even if such sanctions were to be held "in abeyance," such as probationary suspension or expulsion) the institution's investigation and resolution procedures must provide the additional minimal safeguards outlined below.

1. The alleged victim and respondent shall be provided with written notice of the complaint/allegations, pending investigation, possible charges, possible sanctions, and available support services. The notice should also include the identity of any investigator(s) involved. Notice should be provided via institution email to the address on file.
2. Upon receipt of the written notice, the respondent shall have at least three business days to respond in writing. In that response, the respondent shall have the right to admit or to deny the allegations, and to set forth a defense with facts, witnesses, and supporting materials. A non-response will be considered a general denial of the alleged misconduct. Any alleged victim shall also be provided three business days to respond to or to supplement the notice.

3. If the respondent admits responsibility, the process may proceed to the sanctioning phase or may be informally resolved, if appropriate.

4. If at any point the investigator determines there is insufficient evidence to support a charge or to warrant further consideration of discipline, then the complaint should be dismissed.

5. An investigator shall conduct a thorough investigation and should retain written notes and/or obtain written or recorded statements from each interview. The investigator shall also keep a record of any party's proffered witnesses not interviewed, along with a brief, written explanation of why the witnesses were not interviewed.

6. The initial investigation report shall be provided to the respondent and the alleged victim (where applicable). This report should clearly indicate any resulting charges (or alternatively, a determination of no charges), as well as the facts and evidence in support thereof, witness statements, and possible sanctions. For purposes of this Policy, a charge is not a finding of responsibility, but indicates that there is sufficient evidence to warrant further consideration and adjudication.

7. The final investigation report should be provided to the misconduct panel or hearing officer for consideration in adjudicating the charges brought against the respondent. A copy shall also be provided to the respondent and alleged victim (where applicable) before any hearing. The investigator may testify as a witness regarding the investigation and findings, but shall otherwise have no part in the hearing process and shall not attempt to otherwise influence the proceedings outside of providing testimony during the hearing.

**Resolution/Hearing**

In no case shall a hearing to resolve charge(s) of student misconduct take place before the investigative report has been finalized.

Where the respondent indicates that he or she contests the charges, the matter shall be set for a hearing and once the investigative report has been finalized and copies provided to the respondent and alleged victim (where applicable); however, the alleged victim (where applicable) and respondent may have the option of selecting informal resolution as a possible resolution in certain student misconduct cases where they mutually agree, except where deemed inappropriate by the Vice President for Student Affairs (or his/her designee) or the System Director.

Where a case is not resolved through informal resolution or informal resolution is not available due to the nature of the charges, the respondent shall have the option of having the charges heard either by an administrator (hearing officer) or a hearing panel. However, all cases involving charges of sexual misconduct that go to a hearing shall be heard by a panel of staff and/or faculty. Sexual misconduct panel members shall receive appropriate annual training as directed by the System Director or Coordinator and required by the Clery Act. If an administrative hearing is requested, the respondent shall use his or her discretion to determine whether the case should be heard by a hearing panel. Notice of the date, time, and location of the hearing shall be provided to the respondent, complainant, and alleged victim (where applicable) at least five business days prior to the hearing. Notice shall be provided via institution email where applicable. Additionally, the following standards will apply to any such hearing:

The respondent shall have the right to present witnesses and evidence to the hearing officer or panel. Witness testimony, if provided, shall pertain to knowledge and facts directly associated with the case being heard. Both parties shall have the right to confront any witnesses, including the other party, by submitting written questions to the hearing officer for consideration. Advisors may actively assist in drafting questions. The Panel shall ask the questions as written and will limit questions only if they are unrelated to determining the veracity of the charge leveled against the respondent(s). In any event, the Panel shall err on the side of asking all submitted questions and must document the reason for not asking any particular questions.

1. Where the hearing officer or panel determines that a party or witness is unavailable and unable to be present due to extenuating circumstances, the hearing officer or panel may establish special procedures for providing testimony from a separate location. In doing so, the hearing officer or panel must determine whether there is a valid basis for the unavailability, ensure proper sequestration in a manner that ensures testimony has not been tainted, and make a determination that such an arrangement will not unfairly disadvantage any party. Should it be reasonably believed that a party or witness who is not physically present has presented tainted testimony, the hearing officer or panel will disregard or discount the testimony.
   In sexual misconduct cases, the hearing officer reserves the right to allow a party to testify in a separate room, so long as no party is unfairly

disadvantaged by this procedure. A party must still give testimony in the presence of the Panel, and the opposing party must have the opportunity to view the testimony remotely and to submit follow-up questions.

2. Formal civil rules of evidence do not apply to the investigatory or resolution process.

3. The standard of review shall be a preponderance of the evidence; however, any decision to suspend or to expel a student must also be supported by substantial evidence at the hearing.

4. Institutions should maintain documentation of the proceedings, which may include written findings of fact, transcripts, audio recordings, and/or video recordings.

5. Following a hearing, both the respondent and alleged victim (where applicable) shall be simultaneously provided a written decision via institution email (where applicable) of the outcome and any resulting sanctions. The decision should include details on how to appeal, as outlined below. Additionally, the written decision must summarize the evidence in support of the sanction. The same form will be completed, regardless of whether the student opts for a hearing panel or an administrative proceeding.

## Possible Sanctions

In determining the severity of sanctions or corrective actions the following should be considered: the frequency, severity, and/or nature of the offense; history of past conduct; an offender's willingness to accept responsibility; previous institutional response to similar conduct; strength of the evidence; and the wellbeing of the university community. The hearing panel, hearing officer or administrator that found that a policy violation occurred will determine sanctions and issue notice of the same, as outlined above.

The broad range of sanctions includes: expulsion; suspension for an identified time frame or until satisfaction of certain conditions or both; temporary or permanent separation of the parties (e.g., change in classes, reassignment of residence, no contact orders, limiting geography of where parties can go on campus) with additional sanctions for violating no-contact orders; required participation in sensitivity training/awareness education programs; required participation in alcohol and other drug awareness and abuse prevention programs; counseling or mentoring; volunteering/community service; loss of institutional privileges; delays in obtaining administrative services and

benefits from the institution (e.g., holding transcripts, delaying registration, graduation, diplomas); additional academic requirements relating to scholarly work or research; financial restitution; or any other discretionary sanctions directly related to the violation or conduct.

## 4.6.5.3 Appeals

Where the sanction imposed includes a suspension or expulsion (even for one held in abeyance), the following appellate procedures must be provided. The alleged offender (and in cases involving sexual misconduct or other forms of discrimination and/or harassment, the alleged victim) shall have the right to appeal the outcome on any of the following grounds: (1) to consider new information, sufficient to alter the decision, or other relevant facts not brought out in the original hearing, because such information was not known or knowable to the person appealing during the time of the hearing; (2) to allege a procedural error within the hearing process that may have substantially impacted the fairness of the hearing, including but not limited to whether any hearing questions were improperly excluded or whether the decision was tainted by bias; or (3) to allege that the finding was inconsistent with the weight of the information.

Appeals may be made for the above reasons in any case where sanctions are issued, even when such sanctions are held "in abeyance," such as probationary suspension or expulsion. The appeal must be made in writing, and must set forth one or more of the bases outlined above, and must be submitted within five business days of the date of the final written decision. The appeal should be made to the institution's Vice President for Student Affairs or his/her designee.

The appeal shall be a review of the record only, and no new meeting with the respondent or any alleged victim is required. The Vice President, or his or her designee, may affirm the original finding and sanction, affirm the original finding but issue a new sanction of lesser severity, remand the case back to the decision-maker to correct a procedural or factual defect, or reverse or dismiss the case if there was a procedural or factual defect that cannot be remedied by remand. The Vice President or his or her designee shall then issue a decision in writing to the respondent within a reasonable time period.

The decision of the Vice President or his or her designee may be appealed in writing within five business days (as determined by the date of the decision letter) to the President of the institution solely on the three grounds set forth above.

The President may affirm the original finding and sanction, affirm the original finding but issue a new sanction of greater or lesser severity, remand the case back to the decision maker to correct a procedural or factual defect, or reverse or dismiss the case if there was a procedural or factual defect that cannot be remedied by remand. The President's decision shall be simultaneously issued in writing to the complainant, the respondent and the alleged victim (where applicable) within a reasonable time period. The President's decision shall be the final decision of the institution.

Should the respondent or alleged victim (where applicable) wish to appeal the President's decision, he or she may request review by the Board of Regents in accordance with the Board of Regents' Policy on Discretionary Review.

## 4.6.5.4 Recusal/Challenge for Bias

Any party may challenge the participation of any institution official, employee or student panel member in the process on the grounds of personal bias by submitting a written statement to the institution's designee setting forth the basis for the challenge. The designee shall not be the same individual responsible for investigating or adjudicating the conduct allegation. The written challenge should be submitted within a reasonable time after the individual knows or reasonably should have known of the existence of the bias. The institution's designee will determine whether to sustain or deny the challenge and, if sustained, the replacement to be appointed.



IN THE SUPERIOR COURT OF CLARKE COUNTY
STATE OF GEORGIA

State of Georgia          ) Docket CR-CR-17-3885
    v.          )          CR-CR-17-3886
              )
Warren Gregory Coombs     )
              ) Charges:    Rape
              )          Aggravated Sodomy

## NOTICE OF DISMISSAL OF WARRANTS

**NOTICE IS HEREBY GIVEN** of the dismissal of the warrants listed above which had been sent to the District Attorney's Office for prosecution in this transaction. The matter was presented to a Clarke County Grand Jury on this date and said Grand Jury returned a **NO TRUE BILL** on all charges presented. All bonds and conditions previously set in this matter shall be discharged.

Dated this ___5th___ day of June, 2018.

                                          Anna Guardino
                                          Assistant District Attorney

Received by the Clerk of Court on this _____ day of June, 2018.

_____
Clerk/Deputy Clerk of Court

ARMY

# IN THE MAGISTRATE COURT OF ATHENS-CLARKE COUNTY, GEORGIA

STATE OF GEORGIA
VS

Warren Gregory Coombs
Defendant

Warrant Number: MC01CR0R17-3885

Charge: Rape

## WARRANT

Personally appeared, **CHRISTOPHER S ARMEL** who on oath says that, to the best of his/her knowledge and belief, **Warren Gregory Coombs**, did **between 01/14/2016 11:00PM and 01/15/2016 4:00AM** commit the **Felony** offense of **Rape** in violation of O C G A Code Section **16-6-1** at                      **ATHENS, GA, 30601**, Athens-Clarke County, Georgia, and against                      and the laws of the State of Georgia. Prosecutor further states that the accused: **did have carnal knowledge of                      , a female, forcibly and against her will.** . Prosecutor makes this affidavit that a warrant may issue for the accused's arrest.

Sworn to and subscribed before me, This 24 day of July, 2017 at 9:02:44AM

Judge: Benjamin Makin
MAGISTRATE Court of Athens-Clarke County

7/24/2017 9:02:32 AM

Prosecutor: CHRISTOPHER S ARMEL
ID#:      Agency: Athens Clarke County PD

### STATE WARRANT FOR ARREST

To any Sheriff, Deputy Sheriff, Coroner, Constable or Marshal of this State - - Greetings:
For sufficient cause made known to me in the above affidavit, incorporated by reference herein, and other sworn testimony, you are hereby commanded to arrest the accused, **Warren Gregory Coombs**, charged by the Prosecutor therein with the above offense against the laws of this State, and bring the accused before me or some other judicial officer of this State to be dealt with as the law directs. Herein fail not.

This 24 day of July, 2017 at 9:02:44AM

Judge, Benjamin Makin
MAGISTRATE Court of Athens-Clarke County

## INITIAL APPEARANCE AND BAIL ORDER

[ ] Defendant appeared this day before the undersigned Judge for initial appearance as provided by law. The Defendant was fully informed of the charges and other matters as required by Uniform Magistrate Court Rule 25.1 and of the right to a committal hearing, unless waived.

[ ] Defendant shall be granted bail in the amount of $ _____ to secure Defendant's court appearance on the _____ day of _____, 20____ at _____ in the State/Magistrate Court of Athens-Clarke County, Georgia and from day to day thereafter until discharged by law.

Judge:

Tracking No: EW-028579

# IN THE MAGISTRATE COURT OF ATHENS-CLARKE COUNTY, GEORGIA

STATE OF GEORGIA

VS

Warren Gregory Coombs
Defendant

Warrant Number: MC01CRCR12-3886

Charge:  Aggravated Sodomy

## WARRANT

Personally appeared, **CHRISTOPHER S ARMEL** who on oath says that, to the best of his/her knowledge and belief, **Warren Gregory Coombs**, did **between 01/14/2016 11:00PM and 01/15/2016  4:00AM** commit the **Felony** offense of **Aggravated Sodomy** in violation of O.C.G.A. Code Section 16-6-2 **(a)(2)** at ;                                    , **ATHENS, GA, 30601**, Athens-Clarke County, Georgia, and against J_____ nd the laws of the State of Georgia. Prosecutor further states that the accused: **did commit an act of sodomy with force and against the will of**_____ **by forcing her to perform fellatio upon his penis. Coombs did use his hand to push** _____ **head down upon his penis.** . Prosecutor makes this affidavit that a warrant may issue for the accused's arrest.

Sworn to and subscribed before me, This 24 day of July, 2017 at 9:02:44AM

Judge: Benjamin Makin
MAGISTRATE Court of Athens-Clarke County

7/24/2017 9:02:32 AM

Prosecutor: CHRISTOPHER S ARMEL
ID#:        Agency: Athens Clarke County PD

## STATE WARRANT FOR ARREST

To any Sheriff, Deputy Sheriff, Coroner, Constable or Marshal of this State - - Greetings:

For sufficient cause made known to me in the above affidavit, incorporated by reference herein, and other sworn testimony, you are hereby commanded to arrest the accused, **Warren Gregory Coombs**, charged by the Prosecutor therein with the above offense against the laws of this State, and bring the accused before me or some other judicial officer of this State to be dealt with as the law directs. Herein fail not.

This 24 day of July, 2017 at  9:02:44AM

Judge, Benjamin Makin
MAGISTRATE Court of Athens-Clarke County

## INITIAL APPEARANCE AND BAIL ORDER

[ ] Defendant appeared this day before the undersigned Judge for initial appearance as provided by law. The Defendant was fully informed of the charges and other matters as required by Uniform Magistrate Court Rule 25.1 and of the right to a committal hearing, unless waived.

[ ] Defendant shall be granted bail in the amount of $ _____ to secure Defendant's court appearance on the _____ day of _____, 20____ at _____ in the State/Magistrate Court of Athens-Clarke County, Georgia and from day to day thereafter until discharged by law.

Judge:

Tracking No: EW-028580





Search

# Bill of Rights

**UGA Equal Opportunity Office**

**Bill of Rights and Acknowledgments for Complainants and Respondents**

Please Initial:

_____ The Equal Opportunity Office ("EOO") is conducting an administrative, not a criminal or civil law, investigation into possible harassment, discrimination or sexual misconduct under the University's Non Discrimination and Anti-Harassment ("NDAH") Policy or Student Sexual Misconduct Policy (SSMP).

_____ The EOO is <u>not</u> advocating for or representing any party in this process. The EOO cannot provide legal advice to any party in this process.

_____ The EOO is <u>not</u> prosecuting the Respondent(s) in this process. The EOO is gathering information to determine whether there is a preponderance of the evidence that conduct has occurred which violates the NDAH and/or SSMP Policy. In cases under the SSMP Policy, a hearing panel may determine whether a Respondent violated the SSMP.

_____ The information obtained during the investigative process will be evaluated using a preponderance of the evidence standard. This means that in order to find a Respondent in violation either the NDAH or SSMP Policy, more than 50% of the evidence must support that the Respondent engaged in conduct prohibited by the Policy.

_____ As a Complainant or Respondent, you have a right to have a support person of your choice present for all meetings. This person may be an advocate, friend, parent, lawyer or any other person, provided that person is not also a witness in the investigation. The support person may not actively participate in the process, but may be consulted at any point in the process.

_____ If you are a Respondent, you have the right to know the allegations against you and any information obtained during an investigation so that you may have an opportunity to respond.

_____ As a Respondent, you have the right to decline to make any statements or answer questions regarding or related to the alleged misconduct and in doing so, no inference to responsibility will be drawn.

_____ If determined by the Equal Opportunity Office to be appropriate, and if both the Complainant(s) and the Respondent(s) agree, reports of alleged misconduct under the NDAH Policy or SSMP may be informally resolved. Absent such determination and agreement, reports of alleged misconduct shall be resolved pursuant to the formal procedures outlined in the NDAH Policy and in the Code of Student Conduct (for allegations of SSMP violations).

_____ As a Complainant or Respondent, you have the right to identify witnesses, documents, or other materials believed to be relevant for the EOO to review and consider. You also have the right to review the investigative file at any

point during or after the investigation. You have the right to pose questions to parties or witnesses through the investigator.

_____    If a violation is found, the level of discipline and type of sanction(s) will depend on the severity and nature of the violation, the weight of the evidence and the need to maintain a safe and respectful environment. Examples of available sanctions are listed in the NDAH Policy and the University Code of Conduct.

_____    No person connected to an EOO investigation may be subjected to retaliation. Retaliation is a separate violation of the NDAH Policy and SSMP and if found by a preponderance of the evidence to have occurred provides an independent basis for disciplinary action.

_____    As a Complainant or Respondent, you have the right to appeal the outcome of an EOO

investigation under the criteria listed in the NDAH Policy or the SSMP.

_____    If you are a student Complainant or Respondent, the EOO cannot disclose any information about the EOO investigation to your family members or other third parties who are not involved in the investigation without a written release. This is pursuant to the federal Family Educational Rights and Privacy Act (FERPA).

_____    If you are a student Complainant or Respondent, information reported by you during an EOO investigation concerning use of drugs or alcohol will not be used against any student in a University disciplinary proceeding or voluntarily reported to law enforcement.

_____    I have been provided with a copy of, or an electronic link to, the NDAH Policy and/or SSMP. In instances involving the SSMP, I was also provided a copy of University System of Georgia Policy 4.6.5, *Standards for Institutional Student Conduct Investigation and Disciplinary Proceedings*, and the UGA Code of Conduct. Any questions that I have about these policies or their interpretation can be asked of the investigator assigned to my case or UGA's Title IX Coordinator. I have also been notified about support resources on campus and in the community that are available to both Complainants and Respondents.


**By signing I affirm that this Bill of Rights and Acknowledgments has been explained to me and that I have had the opportunity to discuss each item.**


Signature: _____          _____

Date:


Print Name: _____


EOO Staff Signature: _____          _____

Date:

**Download file here:** 📄 bill_of_rights.pdf (https://eoo.uga.edu/sites/default/files/bill_of_rights.pdf)

The University of Georgia | Equal Opportunity Office | Privacy | Submit a Student Complaint          Login

119 Holmes-Hunter Academic Building Athens, GA 30602

706.542.7912 | 706.542.2822(Fax) | ugaeoo@uga.edu

## General Civil and Domestic Relations Case Filing Information Form

≋ EFILED IN OFFICE
CLERK OF SUPERIOR COURT
CLARKE COUNTY, GEORGIA

**SU19CV0237**

H. PATRICK HAGGARD
APR 17, 2019 02:29 PM

*Beverly Logan*
Beverly Logan, Clerk
Athens - Clarke County, Georgia

☑ **Superior** or ☐ **State Court of** ___Clarke___ **County**

**For Clerk Use Only**

**Date Filed** ___04-17-2019___   **Case Number** ___SU19CV0237___
   MM-DD-YYYY

**Plaintiff(s)**

Coombs, Warren Mr.

| Last | First | Middle I. | Suffix | Prefix |
|------|-------|-----------|--------|--------|
| | | | | |
| Last | First | Middle I. | Suffix | Prefix |
| | | | | |
| Last | First | Middle I. | Suffix | Prefix |
| | | | | |
| Last | First | Middle I. | Suffix | Prefix |

**Defendant(s)**

Moorehead, Jere W. Dr.

| Last | First | Middle I. | Suffix | Prefix |
|------|-------|-----------|--------|--------|
| Board of Regents of the University System of G | | | | |
| Last | First | Middle I. | Suffix | Prefix |
| | | | | |
| Last | First | Middle I. | Suffix | Prefix |
| | | | | |
| Last | First | Middle I. | Suffix | Prefix |

**Plaintiff's Attorney** ___Allen, Benjamin___   **Bar Number** ___009836___   **Self-Represented** ☐

### Check One Case Type in One Box

**General Civil Cases**

- ☐ Medical Malpractice Tort
- ☐ Product Liability Tort
- ☐ Automobile Tort
- ☐ General Tort
- ☑ Contract
- ☐ Real Property
- ☐ Civil Appeal
- ☐ Habeas Corpus
- ☐ Restraining Petition
- ☐ Injunction/Mandamus/Other Writ
- ☐ Garnishment
- ☐ Landlord/Tenant
- ☐ Other General Civil

**Domestic Relations Cases**

- ☐ Dissolution/Divorce/Separate Maintenance
- ☐ Paternity/Legitimation
- ☐ Support – IV-D
- ☐ Support – Private (non-IV-D)
- ☐ Adoption
- ☐ Family Violence Petition
- ☐ Other Domestic Relations

**Post-Judgement – Check One Case Type**

- ☐ Contempt
  - ☐ Non-payment of child support, medical support, or alimony.
- ☐ Modification
- ☐ Administrative/Other

☐ Check if the action is related to another action(s) pending or previously pending in this court involving some or all the same parties, subject matter, or factual issues. If so, provide a case number for each.

_____   _____
**Case Number**                **Case Number**

☑ I hereby certify that the documents in this filing, including attachments and exhibits, satisfy the requirements for redaction of personal or confidential information in O.C.G.A. §9-11-7.1.

☐ Is interpreter needed in this case? If so, provide the language(s) required. _____
                                                                                                **Language(s) Needed**

☐ Do you or your client need any disability accommodations? If so, please describe the accommodation request.

## SUPERIOR COURT OF CLARKE COUNTY
## STATE OF GEORGIA

⚖ EFILED IN OFFICE
CLERK OF SUPERIOR COURT
CLARKE COUNTY, GEORGIA

**SU19CV0237**
H. PATRICK HAGGARD
APR 17, 2019 02:29 PM

Beverly Logan, Clerk
Athens - Clarke County, Georgia

CIVIL ACTION NUMBER  SU19CV0237

Coombs, Warren Mr.

_____

**PLAINTIFF**
                                        **VS.**

Moorehead, Jere W. Dr.
Board of Regents of the University System of
GA

_____

**DEFENDANTS**

### SUMMONS

TO THE ABOVE NAMED DEFENDANTS:

You are hereby summoned and required to file with the Clerk of said court and serve upon the
Plaintiff's attorney, whose name and address is:

**Benjamin Allen**
**Benjamin Allen & Associates, PC**
**P. O. Box 156**
**Augusta, Georgia 30903**

an answer to the complaint which is herewith served upon you, within 30 days after service of
this summons upon you, exclusive of the day of service. If you fail to do so, judgment by
default will be taken against you for the relief demanded in the complaint.

**This 17th day of April, 2019.**

                              Clerk of Superior Court


                              Beverly Logan, Clerk
                              Athens - Clarke County, Georgia

# SUPERIOR COURT OF CLARKE COUNTY
# STATE OF GEORGIA

⚜ EFILED IN OFFICE
CLERK OF SUPERIOR COURT
CLARKE COUNTY, GEORGIA

**SU19CV0237**

H. PATRICK HAGGARD
APR 17, 2019 02:29 PM

Beverly Logan, Clerk
Athens - Clarke County, Georgia

CIVIL ACTION NUMBER   SU19CV0237

Coombs, Warren Mr.

**PLAINTIFF**

**VS.**

Moorehead, Jere W. Dr.
Board of Regents of the University System of
GA

**DEFENDANTS**

**SUMMONS**

TO THE ABOVE NAMED DEFENDANTS:

You are hereby summoned and required to file with the Clerk of said court and serve upon the
Plaintiff's attorney, whose name and address is:

**Benjamin Allen**
**Benjamin Allen & Associates, PC**
**P. O. Box 156**
**Augusta, Georgia 30903**

an answer to the complaint which is herewith served upon you, within 30 days after service of
this summons upon you, exclusive of the day of service. If you fail to do so, judgment by
default will be taken against you for the relief demanded in the complaint.

**This 17th day of April, 2019.**

Clerk of Superior Court

Beverly Logan, Clerk
Athens - Clarke County, Georgia

# SHERIFF'S ENTRY OF SERVICE

SECOND ORIGINAL

**EFILED IN OFFICE**
CLERK OF SUPERIOR COURT
CLARKE COUNTY, GEORGIA

**SU19CV0237**
H. PATRICK HAGGARD
MAY 13, 2019 02:11 PM

Civil Action No. ___SU19CV0237___ 19MR00496

Date Filed ___04/17/19 02:29 PM___

Attorney's Address  **Allen, Benjamin**
**Benjamin Allen & Associates, PC**
**P. O. Box 156**
**Augusta, Georgia 30903**

Name and Address of Party to be Served.
**BOARD OF REGENTS OF THE UNIVERSITY SYSTEM OF GA,**

**270 WASHINGTON STREET, S. W.**

**ATLANTA, Georgia 30334**

Superior Court ☒   Magistrate Court ☐
State Court ☐   Probate Court ☐
Juvenile Court ☐

Georgia, **CLARKE** COUNTY

COOMBS, WARREN

Beverly Logan, Clerk
Athens - Clarke County, Georgia

Plaintiff

VS.

MOOREHEAD, JERE W.; BOARD OF REGENTS OF

THE UNIVERSITY SYSTEM OF GA,

**COST PAID**
APR 23 2019

Defendant

Fulton County Marshal's Dept.
Receipt #

SHERIFF'S ENTRY OF SERVICE  $ By

**PERSONAL** ☐ I have this day served the defendant_____ personally with a copy of the within action and summons.

**NOTORIOUS** ☐ I have this day served the defendant_____ by leaving a copy of the action and summons at his most notorious place of abode in this County.

Delivered same into hands of_____ described as follows: age, about ____ years; weight ____ pounds; height, about ____ feet and ____ inches, domiciled at the residence of defendant.

**CORPORATION** Served the defendant _Board of Regents of the University System of GA_ a corporation by leaving a copy of the within action and summons with _Chris McEver, Agent_ in charge of the office and place of doing business of said Corporation in the County.

**TACK & MAIL** ☐ I have this day served the above styled affidavit and summons on the defendant(s) by posting a copy of the same to the door of the premises designated in said affidavit, and on the same day of such posting by depositing a true copy of the same in the United States Mail, first class in an envelope property address to the defendant(s) at the address shown in said summons, with adequate postage affixed thereon containing notice to the defendant(s) to answer said summons at the place stated in the summons.

**NON EST** ☐ Diligent search made and defendant_____ not to be found in the jurisdiction of this court.

This __30__ day of __April__, 20_19_

Deputy

☒ EFILED IN OFFICE
CLERK OF SUPERIOR COURT
CLARKE COUNTY, GEORGIA

**SU19CV0237**

H. PATRICK HAGGARD
MAY 21, 2019 02:36 PM

Beverly Logan, Clerk
Athens - Clarke County, Geor

IN THE SUPERIOR COURT OF CLARKE COUNTY
STATE OF GEORGIA

WARREN COOMBS,

    Plaintiff,

v.

JERE MOOREHEAD, et al.,

    Defendants.

CIVIL ACTION NO.
SU19CV0237-H

## ANSWER AND DEFENSES OF DEFENDANTS

Defendants Jere Morehead and the Board of Regents answer and respond to Plaintiff's complaint as follows:

### First Defense

Plaintiff fails to state a claim upon which relief may be granted.

### Second Defense

Plaintiff's claims against the Board of Regents and against Defendant Morehead in his official capacity are barred, in whole or in part, by sovereign immunity and the Eleventh Amendment.

### Third Defense

Plaintiff's federal claims against Defendant Morehead in his individual capacity are barred by the doctrine of qualified immunity.

### Fourth Defense

Plaintiff's claims are barred, in whole or in part, by the applicable statutes of limitations.

### Fifth Defense

Defendants deny that Plaintiff has been subjected to the deprivation of any right, privilege, or immunities under the Constitution or laws of the United States or the State of Georgia.

### Sixth Defense

Defendant Morehead cannot be held liable for any actions involving Plaintiff in which he did not directly participate or of which he had no knowledge.

### Seventh Defense

The Board of Regents is not a person within the meaning of 42 U.S.C. § 1983.

### Eighth Defense

Defendants have not caused Plaintiff any cognizable injury.

### Ninth Defense

Plaintiff's alleged injuries and damages were not proximately caused by any act or omission on the part of Defendants, with the result that the Plaintiff is not entitled to recover in this case.

### Tenth Defense

Subject matter jurisdiction is lacking to the extent that this action is barred by sovereign immunity.

Eleventh Defense

Plaintiffs' alleged injuries and damages were not proximately caused by any act or omission on the part of Defendants, with the result that Plaintiffs are not entitled to recover against Defendants in this case.

Twelfth Defense

Defendants respond to the specifically numbered Paragraphs of Plaintiffs' Complaint as follows:

1(a).

Defendants admit that (1) Plaintiff brings this action; (2) Plaintiff formerly was a student at the University of Georgia; and (3) Plaintiff accurately, though only partially and with a typographical error, quotes from portions of the United States and Georgia Constitutions. Defendants deny any other allegations in Paragraph 1(a).

1(b).

Defendants admit that Plaintiff is a former student at the University of Georgia, a state university, and, upon information and belief, that Plaintiff is a citizen of Georgia. Defendants admit that students generally are entitled to some measure of notice and some opportunity to be heard concerning many serious allegations of misconduct. Defendants deny any other allegations in Paragraph 1(b).

2.

Defendants deny the allegations in Paragraph 2.

3.

Defendants admit that Plaintiff was a student at the University of Georgia in portions of 2015 and 2016 and that he was expelled from the University in 2016. Defendants deny any other allegations in Paragraph 3.

4.

Defendants admit the allegations in Paragraph 4.

5.

Defendants admit the allegations in Paragraph 5.

6.

Defendants deny the allegations in Paragraph 6.

7.

Defendants deny that any wrongful acts occurred, but admit that the acts on which this matter is based occurred in Clarke County, Georgia, and admit that venue is proper in this Court.

8.

Defendants deny the allegations in Paragraph 8.

9.

Defendants admit that Plaintiff, by certified mail, sent the letter attached to the complaint as Exhibit B, which speaks for itself. Defendants deny any other allegations in Paragraph 9.

10.

Defendants admit that Plaintiff was suspended from the University, effective April 14, 2016, in relation to multiple allegations of misconduct violating the specified policy, as stated in Exhibit C, which speaks for itself. Defendants deny any other allegations in Paragraph 10.

11.

Defendants admit that Plaintiff sent the letter attached to the complaint as Exhibit D, which speaks for itself. Defendants deny any other allegations in Paragraph 11.

12.

Defendants admit that Morehead's assistant, Arthur Tripp, sent to Plaintiff the letter attached to the complaint as Exhibit E, which speaks for itself. Defendants deny any other allegations in Paragraph 12.

13.

Defendants admit that the University's Equal Opportunity Office sent Exhibit F, which speaks for itself, to Plaintiff. Defendants deny any other allegations in Paragraph 13.

14.

Defendants deny the allegations in Paragraph 14.

15.

Defendants deny the allegations in Paragraph 15.

16.

Defendants deny the allegations in Paragraph 16.

17.

Defendants deny the allegations in Paragraph 17.

18.

Defendants admit that Plaintiff, through counsel, sent to Morehead the letter attached to the complaint as Exhibit G, which speaks for itself. Defendants deny any other allegations in Paragraph 18.

19.

Defendants admit that Morehead sent to Plaintiff the letter attached to the complaint as Exhibit H, which speaks for itself. Defendants deny any other allegations in Paragraph 19.

20.

Defendants admit that Morehead was aware that Exhibit G was submitted by legal counsel on behalf of Plaintiff. Defendants deny any other allegations in Paragraph 20.

21.

Defendants admit only that Morehead's letter of September 8, 2016 (Exhibit H) was sent directly to Plaintiff and not directly to Plaintiff's counsel. Defendants deny any other allegations in Paragraph 21.

22.

Defendants deny the allegations in Paragraph 22.

23.

Defendants admit that Plaintiff sent to the Board of Regents the letter attached to the complaint as Exhibit I, which speaks for itself. Defendants deny any other allegations in Paragraph 23.

24.

Defendants admit that the Board of Regents, through its Office of Legal Affairs, sent to Plaintiff's counsel the email attached to the complaint as Exhibit A, which speaks for itself. Defendants deny any other allegations in Paragraph 24.

25.

Defendants deny the allegations in Paragraph 25.

26.

Defendants deny the allegations in Paragraph 26.

27.

Any allegations to which Defendants have not otherwise responded are hereby denied. Defendants deny that they are liable to Plaintiff for any reason or in any amount.

WHEREFORE Defendants pray that this Court:

1.   Enter judgment in their favor and against Plaintiff;

2.   Deny Plaintiff all relief;

3.   Grant them a jury trial;

4.    Grant them a 12-person jury on any issues not capable of resolution as a matter of law; and

5.    Grant them such other and further relief as the Court may deem appropriate.

Respectfully submitted this 21st day of May, 2019.

CHRISTOPHER M. CARR  112505
Attorney General

KATHLEEN M. PACIOUS 558555
Deputy Attorney General

SUSAN E. TEASTER  701415
Senior Assistant Attorney General

/s/ Laura L. Lones
LAURA L. LONES 456778
Senior Assistant Attorney General

Attorneys for Defendants

Please Serve:
LAURA L. LONES
Department of Law, State of Georgia
40 Capitol Square, S.W.
Atlanta, Georgia  30334-1300
Telephone: (404) 463-8850
Facsimile: (404) 651-5304
E-mail: llones@law.ga.gov

CERTIFICATE OF SERVICE

I do hereby certify that I have this day served the within and foregoing ANSWER AND DEFENSES OF DEFENDANTS by depositing a copy thereof, postage prepaid, in the United States Mail, properly addressed to the following:

Benjamin Allen
P.O. Box 156
Augusta, Georgia  30903

Submitted this 21st of May, 2019.

/s/Laura L. Lones
LAURA L. LONES 456778
Senior Assistant Attorney General